BONKOWSKI v ALLSTATE INSURANCE COMPANY

Docket No. 273945. Submitted March 11, 2008, at Detroit. Decided October 2, 2008, at 9:00 a.m. Leave to appeal sought.

Shaun Bonkowski brought an action in the Oakland Circuit Court against Allstate Insurance Company, his no-fault automobile insurer, seeking an increase in the hourly rate his father, Andrew Bonkowski, was to be paid for around-the-clock attendant care for the plaintiff. The plaintiff had been nearly paralyzed from the neck down as a result of an automobile accident. Andrew had received from personnel in a hospital specializing in quadriplegia and closed head injuries extensive training on care for the plaintiff. The defendant had decided to pay Andrew at $19 an hour, which was the average of the hourly rates for registered nurses, licensed professional high-tech nurses, and licensed practical nurses. However, the plaintiff had sought $34 an hour. Following a jury trial, the court, Charles W. Simon, Jr., J., entered a judgment on a jury award to the plaintiff of $1,381,114 in attendant-care benefits and $349,609.67 in penalty interest of 12 percent a year (as allowed by MCL 500.3148[1] when a denial of benefits is unreasonable). Also included in the judgment were the trial court's awards of $10,546.85 in costs, $249,750 in attorney fees pursuant to MCL 500.3148, and $525,126.35 in judgment interest under MCL 600.6013. The defendant appealed the denial of its motion for judgment notwithstanding the verdict and the award of attorney fees under MCL 500.3148. The plaintiff cross-appealed the denial of attorney fees as case-evaluation sanctions under MCR 2.403 and the trial court's failure to impose through the satisfaction of the judgment the 12 percent penalty interest under MCL 500.3142(3). The plaintiff also sought appellate attorney fees under MCL 500.3148 and MCR 7.216(c), claiming that the defendant's appeal was vexatious.

The Court of Appeals *held*:

1. The trial court properly denied the defendant's motion for judgment notwithstanding the verdict. MCL 500.3107(1)(a) provides, in part, that personal protection insurance benefits are payable for reasonable charges incurred for reasonably necessary services for an injured person's care. The statute does not require

that services be supplied by trained medical personnel, and family members should be compensated for services they provide at home to an injured person in need of care. In this case, it is not disputed that the plaintiff needs 24-hour attendant care and there was sufficient evidence to support the jury's determination that the compensation offered to Andrew was not adequate, given the training he received and the care he provided to the plaintiff.

2. The trial court erred by awarding the plaintiff attorney fees pursuant to MCL 500.3148(1). When considering whether attorney fees are warranted under that statute, the inquiry is not whether coverage is ultimately determined to exist, but whether the insurer's initial refusal to pay was reasonable. A delay in payment is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. It appears that the trial court only considered the jury's conclusion that Andrew was entitled to greater compensation than that offered by the defendant. The defendant established that its initial refusal to pay Andrew at a higher rate was based on a bona fide and legitimate dispute over proper compensation for attendant-care services provided by an individual who is not a licensed health-care professional. The award of attorney fees under MCL 500.3148(1) must be vacated.

3. On remand, the trial court shall determine whether the plaintiff is entitled to case-evaluation sanctions under MCR 2.403. To the extent case-evaluation sanctions are appropriate, the trial court shall not rely on its prior assessment of attorney fees under MCL 500.3148 and shall follow the method of awarding such fees set by the Supreme Court in *Smith v Khoury*, 481 Mich 519 (2008).

4. The plaintiff is not entitled to 12 percent penalty interest under MCL 500.3142(3) after the entry of judgment and continuing through the satisfaction of judgment. Interest under MCL 500.3142(3) is part of the awarded damages, and MCL 500.3142(3) may not be applied postjudgment to provide for an award of interest on the judgment in addition to the judgment interest allowed by MCL 600.6013 from the date the complaint was filed to the date the judgment is satisfied.

5. The plaintiff has not established a claim for appellate attorney fees under MCL 500.3148(1) or MCR 7.216(C)(1). It is the trial court, not the Court of Appeals, that considers claims for attorney fees under MCL 500.3148(1). A request for sanctions under MCR 7.216(C)(1) must be made by motion, not in a brief as the plaintiff has done. Moreover, because the defendant has prevailed in part on appeal, its appeal cannot be considered vexatious.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — REFUSAL TO PAY OR DELAY IN PAYING INSURANCE BENEFITS — ATTORNEY FEES.

The proper inquiry when considering whether attorney fees are warranted under the no-fault act for the unreasonable refusal or delay in making proper payment of personal protection insurance benefits is not whether coverage is ultimately determined to exist, but whether the insurer's initial refusal to pay was reasonable; delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty (MCL 500.3148[1]).

2. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — OVERDUE PAYMENTS — PENALTY INTEREST.

The 12 percent penalty interest allowed by the no-fault act for overdue personal protection insurance benefits may not be applied to provide interest on the judgment in addition to the judgment interest allowed by the Revised Judicature Act (MCL 500.3142, 600.6013).

*Liss and Associates, P.C.* (by *Nicholas S. Andrews* and *Arthur Y. Liss*), and *Larry A. Smith* for the plaintiff.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor* and *Simeon R. Orlowski*), for the defendant.

Before: TALBOT, P.J., and CAVANAGH and ZAHRA, JJ.

ZAHRA, J. In this attendant care benefit case brought under the Michigan no-fault act, MCL 500.3101 *et seq.*, defendant, Allstate Insurance Company, appeals as of right a $2,541,146.87 jury verdict in favor of plaintiff, Shaun Bonkowski. The judgment entered on the verdict reflects the jury award of $1,730,723.67 in past due attendant care benefits, $10,546.85 in costs, $249,750 in attorney fees (549.5 hours at $500 an hour) pursuant to MCL 500.3148, and $525,126.35 in statutory interest pursuant to MCL 600.6013. The judgment denied plain-

tiff's requests for additional attorney fees as case evaluation sanctions pursuant to MCR 2.403. The judgment also denied a request for 12 percent penalty interest under MCL 500.3142(3), running from the entry of the judgment through the satisfaction of judgment. Defendant appeals the denial of its motion for judgment notwithstanding the verdict (JNOV), the award of attorney fees under MCL 500.3148, and the amount of attorney fees awarded. Plaintiff cross-appeals the trial court's denial of attorney fees under MCR 2.403 and the trial court's failure to impose through the satisfaction of judgment the 12 percent penalty interest under MCL 500.3142(3). Plaintiff also requests attorney fees on appeal pursuant to MCL 500.3148 and MCR 7.216(C), claiming that defendant's appeal is vexatious. We affirm the denial of the motion for JNOV and the denial of a 12 percent penalty interest through the satisfaction of judgment under MCL 500.3142(3). We reverse the attorney fees awarded under MCL 500.3148 and the trial court's denial of reasonable attorney fees under MCR 2.403. We vacate the award of attorney fees and remand for a determination of reasonable attorney fees, if any, awardable under MCR 2.403 and consistent with *Smith v Khoury*, 481 Mich 519; 751 NW2d 472 (2008).

## I. FACTS AND PROCEDURAL HISTORY

On June 3, 2001, 18-year-old Shaun Bonkowski, plaintiff, was struck by an automobile and suffered extensive and tragic injuries, including a spinal cord injury that left him nearly paralyzed from the neck down. He also suffered a traumatic brain injury, which impairs his short-term memory and ability to concentrate, and causes him emotional problems. Despite his injuries, plaintiff is able to operate a powered wheelchair and, with devices attached to his wrist, plaintiff

can feed himself and use a computer keyboard. The driver of the vehicle that struck plaintiff was never located. Plaintiff was nonetheless insured under a no-fault automobile insurance policy issued by defendant.

Plaintiff initially received treatment at St. Joseph's Mercy Hospital until August 15, 2001. On that day, defendant arranged for plaintiff, along with his father, Andrew, to travel by a medical air service to the Craig Hospital (the Craig) in Colorado, an institution that specializes in quadriplegia and closed head injuries. Plaintiff and Andrew resided at the Craig until December 1, 2001. While there, Andrew received extensive training on how to care for plaintiff. A nonexhaustive list of the care that Andrew provides to plaintiff includes: administering oral medication, detecting and assessing pain, diagnosing dysreflexia (a potentially lethal condition involving a rise in blood pressure in a paraplegic), clearing lungs, administering a bowel program, preventing and treating skin ailments, physical therapy (moving his arms and legs to maintain a range of motion), attending to emotional concerns, maintaining hygiene and tending to dietary needs. Dr. Owen Perlman, physiatrist and plaintiff's primary treating physician, characterized Andrew's care of plaintiff as interdisciplinary or multidisciplinary, in that different aspects of plaintiff's care would be performed by different health care professionals, including nurses, physical therapists, respiratory therapists, psychologists, etc.

Laura Kling, a registered nurse employed by a private rehabilitation company that coordinates plaintiff's health care services, became involved with plaintiff's care when he was admitted at St. Joseph's and managed plaintiff's care from 2003 to 2005. She participated in the discharge planning process at the Craig. She observed that Andrew, through the training provided at

the Craig, obtained all the skills required to be an excellent caregiver to plaintiff. Despite Andrew's not having previous medical training and having obtained only the equivalent of a high school degree, the Craig discharged plaintiff to Andrew's care.

Defendant's employee, Jan Mainella was assigned to plaintiff's claim on June 9, 2001. Mainella received preliminary reports from Kling and plaintiff's attending physician at the Craig indicating that plaintiff would require 24-hour attendant care from a high-tech professional nurse or a registered nurse. Mainella also learned that plaintiff anticipated that Andrew would provide plaintiff 24-hour attendant care. Mainella recognized that while Andrew was not a high-tech professional nurse or a registered nurse, he was entitled to reasonable compensation for the care he provided to plaintiff. Mainella, using the Home Care Salary and Benefit Report, 2001-2002 (Report), determined what she deemed to be reasonable compensation payable to Andrew. Pursuant to that Report, the typical hourly salaries paid to Michigan nurses were $19.57 an hour for registered nurses, $22.80 an hour for licensed professional high-tech nurses, and $14.67 an hour for licensed practical nurses. Mainella decided that $456 a day was reasonable compensation for Andrew for providing Shaun 24-hour attendant care. She arrived at this amount by multiplying $19, the average of the above hourly rates, by 24 hours, because Andrew would be providing plaintiff with around–the-clock care. Thus, defendant agreed to pay Andrew approximately $166,000 a year to provide attendant care to plaintiff.

On August 29, 2001, well before the Craig discharged plaintiff to Andrew's care, plaintiff's counsel sent a letter to defendant demanding that Andrew be paid $34 an hour for the attendant care he was to provide.

Defendant declined to increase the amount it intended to pay Andrew, and plaintiff filed this lawsuit on October 4, 2001. Defendant paid Andrew at a rate of $166,000 a year to attend to plaintiff. Defendant did not deny any requests relating to plaintiff's care, aside from plaintiff's request to increase the compensation paid to Andrew to provide 24-hour attendant care to plaintiff. On January 8, 2002, defendant offered to provide Andrew health care insurance.

At trial, plaintiff presented evidence that, upon discharge from the Craig, plaintiff's attending physician prescribed him 24-hour high-tech licensed practical nurse (LPN)[1] or registered nurse (RN) care. Plaintiff established that after returning home, Dr. Perlman similarly prescribed plaintiff "24 hour high-tech LPN" attendant care, from January 29, 2002, to the date of trial. In a deposition admitted at trial, Dr. Perlman described the care Andrew provides to plaintiff as the equivalent of the care provided by a "24-hour high-tech licensed professional nurse or even a registered nurse." Kling similarly testified that, "there is no question" that Andrew "has the knowledge, skill and expertise to provide the care for his son." Gerald Shiener, a board certified psychiatrist, testified that Andrew's care met or exceeded plaintiff's psychological needs in an appropriate manner.

Plaintiff also presented evidence that the training from the Craig was "unbelievable." Kling testified that not all registered nurses or high-tech licensed professional nurses could provide the care that Andrew provides to plaintiff because they would need additional

---

[1] Many witnesses used the terms "high-tech practical nurse" and "high-tech professional nurse" interchangeably. The record is unclear about whether these are two distinct positions that require different levels of training.

training. She testified that even as a registered nurse, she could not provide care for a person with a spinal cord injury because she had not had the specific training. She also testified that the best place for someone with plaintiff's maladies would be at home with family caregivers.

Kling testified that licensed home health care professionals could be retained through the use of a health care agency. Such an agency would charge $37 to $40 an hour for a high-tech licensed practical nurse and $50 an hour for a registered nurse. Robert Ancell, a vocational rehabilitation counselor and case manager familiar with plaintiff's care, testified that "he had an understanding of what the costs are of different types of care that are needed for various medical conditions like [plaintiff's.]" He testified that a high-tech licensed practical nurse would cost $40 an hour and that a registered nurse would cost $50 an hour, not including shift premiums and overtime. He also testified that physical therapy sessions cost $125 an hour, respiratory therapist sessions cost $75 a visit, and that behavioral therapist sessions cost $40 to $80 an hour. Ancell prepared an exhibit introduced at trial indicating that plaintiff's attendant care would have cost $3,205,125 if provided by a registered nurse, which defense counsel noted amounted to $80 an hour.

On cross-examination, defense counsel elicited testimony that Ancell's testimony was based on agency rates, and that the person actually providing the care would receive less than the agency rate. Defense counsel also elicited testimony that an agency rate, in addition to providing a profit for the agency, assumes costs such as workers' compensation insurance, professional liability insurance, malpractice insurance, health insurance, disability insurance, a secretarial staff, rent,

legal fees, accounting costs, and office supplies. On re-direct examination, Ancell noted that Andrew does not receive many of the benefits listed above.

Defendant presented Mainella as its only witness at trial. In addition to testifying about how she determined Andrew's compensation, she testified that she did not consider the compensation paid to home health care agencies, occupational therapists, physical therapists, or behavioral technicians, though she knew that Andrew provided plaintiff this type of care. She testified that defendant was unwilling to pay the agency rate for Andrew to care for plaintiff because an agency is licensed and incurs more expenses. In response to the question, "If Andy wasn't there, [defendant] would have to pay a lot more money than they're paying right now, right?" Mainella replied, "Willingly." She testified, "I want to pay [Andrew] a reasonable and fair rate for the care he provides his son." She explained that, although Dr. Perlman prescribed attendant care from a registered nurse or a high-tech professional nurse, she averaged in the hourly rate of licensed practical nurses to account for more basic care that plaintiff would provide.

On cross-examination, Mainella admitted that she had assumed that hourly rates listed in the Report did not include benefits of employment. She admitted that, although the Report provided for cost of living increases, she continued to pay Andrew $19 an hour because of pending litigation. She admitted that in determining Andrew's hourly rate she did not consider paying him more for being on call or on overtime. She also admitted that she did not consider that the Report indicated that a registered nurse receives $35.47 an hour for the second shift, $44.33 an hour for the third shift, and $42.28 an hour for the weekend shift. She also

admitted that she did not consider that the Report indicated that an occupational therapist made $49.31 an hour and that a physical therapist made $50.06 an hour. She admitted that Andrew does not receive any of the 22 fringe benefits listed in the Report. She testified that, if Andrew wanted fringe benefits, he could apply for a position at an agency and they could send him to care for plaintiff.

The jury returned a unanimous verdict in favor of plaintiff. The jury specifically found that "the amount of allowable expense owed to the plaintiff" was $1,381,114. The jury also found that the "payment for any of the expenses or losses to which plaintiff was entitled was overdue" and that the amount of interest owed, at 12 percent per annum, was $349,609.67.

Defendant moved for a directed verdict at the close of plaintiff's proofs and for JNOV after the verdict was returned. Both motions were denied. In denying the motion for JNOV, the trial court stated that "reasonable minds obviously could differ" in regard to whether $19 [an hour] was reasonable and noted that defendant did not present an expert at trial. Notwithstanding the trial court's conclusion that reasonable minds could differ about whether compensating Andrew at a rate of $19 an hour for 24 hours a day and 365 days a year was reasonable, the trial court later awarded plaintiff $249,750 in attorney fees under the no-fault act.[2] The judgment stated the trial court's conclusion that defendant "unreasonably delayed in making proper payment on no-fault benefits due to plaintiff[.]" The trial court denied plaintiff's requests for case evaluation sanctions, but awarded plaintiff $10,546.85 in costs and

---

[2] Such fees are awardable under the no-fault act only where the trial court concludes that the denial of insurance benefits was unreasonable. MCL 500.3148(1).

$525,126.35 in statutory interest, pursuant to MCL 600.6013. This appeal ensued.

## II. ANALYSIS

This case touches on an interesting question of law and statutory interpretation: whether, when determining reasonable compensation payable under MCL 500.3107(1)(a) to lay providers of attendant care services, a jury may rely on the rates charged by health care agencies that employ licensed health care professionals who provide attendant care services. We use the words "touches on" intentionally, as this issue is not squarely before us in this appeal.

This Court has previously embraced the notion that "comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed [by family members]." *Manley v Detroit Automobile Inter-Ins Exch*, 127 Mich App 444, 455; 339 NW2d 205 (1983); see also *Sharp v Preferred Risk Mut Ins Co*, 142 Mich App 499, 514; 370 NW2d 619 (1985). We question the conclusion reached in *Manley*.

Under MCL 500.3107, family members are entitled to reasonable compensation for the services they provide at home to an injured person in need of care. *Van Marter v American Fidelity Fire Ins Co*, 114 Mich App 171, 178-181; 318 NW2d 679 (1982); *Visconti v Detroit Automobile Inter-Ins Exch*, 90 Mich App 477; 282 NW2d 360 (1979). In determining reasonable compensation for an unlicensed person who provides health care services, a fact-finder may consider the compensation paid to licensed health care professionals who provide similar services. *Van Marter, supra* at 180-181. For this reason, consideration of the compensation paid by

health care agencies to their licensed health care employees for rendering services similar to the services provided by unlicensed family members is appropriate when determining reasonable compensation for those family members. However, the actual charges assessed by health care agencies in the business of providing such services is not relevant and provides no assistance in determining reasonable compensation for the actual provider of such services. The focus should be on the compensation provided to the person providing the services, not the charge assessed by an agency that hires health care professionals to provide such services.

Notwithstanding our questioning of *Manley,* defendant did not argue in the trial court or on appeal in this Court that *Manley* was wrongly decided.[3] Rather, the lower court record reflects that defendant only argued before the trial court that, under MCL 500.3107, Andrew's expenses had not been "incurred." The question whether attendant care services were "incurred" is distinct from the question whether the amount paid for attendant care services was reasonable. Defendant maintains that its written motion for directed verdict argued that evidence of rates charged by an agency was not relevant. However, the only document in the lower court record entitled "directed verdict" is actually a mislabeled motion for judgment notwithstanding the verdict.[4]

This Court's review is limited to the record of the trial court. *Amorello v Monsanto Corp,* 186 Mich App 324, 330; 463 NW2d 487 (1990). The lower court record reveals that, at defendant's oral motion for directed

---

[3] Even on appeal, defendant's brief does not cite *Manley.*

[4] Even assuming that the motion for JNOV is in fact a mislabeled motion for directed verdict, that motion similarly only argues that Andrew's expenses had not been "incurred."

verdict, defense counsel argued that Andrew's expenses had not been "incurred."[5] Also, defendant did not seek to preclude, through a pretrial motion in limine, the presentation of any evidence of health care agency rates. Further, defendant did not object to the jury instructions, which quoted *Manley* and provided in pertinent part that "[c]omparison to rates charged by institutions provides a valid method for determining whether the amount of the expense was reasonable and for placing a value on comparable services." Defendant appeals only the denial of its motion for JNOV. For these reasons, our review is limited to whether the trial court properly denied defendant's motion for JNOV.[6]

---

[5] Defense counsel argued before the trial court:

> Your Honor, this is a motion for partial directed verdict. In a nutshell, your Honor, what it says is, that during the course of this case there was testimony, especially yesterday, regarding rate. The rates that were presented were agency rates. Dr. Ancell, as the Court will recall, testified to this at great length, that these were rates that an agency would charge.

> I'm asking that those—that the jury not be allowed to consider those rates because those rates have not been incurred. As the Court knows, under the no-fault law, in order for an insurer to be liable for a benefit, the claim must have been incurred. There's been no testimony in this case that those charges have been incurred.

> And so I'm asking the Court to grant a motion for partial directed verdict, which would have the net effect that the jury would not be allowed to consider those rates, those agency rates, because they have not been incurred. Thank you, your Honor.

[6] Stated differently, our review is limited to the narrow question whether the jury was presented with any evidence to support the verdict, not the much broader and legally significant question whether the jury should have been precluded from hearing any evidence of the rates a health care agency could have charged defendant to retain a licensed health care provider, had Andrew not attended to plaintiff's many medical needs.

### A. JNOV

This Court reviews de novo the trial court's denial of a motion for JNOV. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003). In doing so, we "review the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Id.* (quotation marks and citation omitted). "A motion for directed verdict or JNOV should be granted only if the evidence viewed in this light fails to establish a claim as a matter of law." *Id.* "If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand." *Zantel Marketing Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005) (quotation marks and citations omitted).

MCL 500.3107(1)(a) provides:

Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. . . .

In *Van Marter, supra* at 180, this Court recognized that no-fault "benefits are payable for 'all reasonable charges' which relate to the care, recovery or rehabilitation of the injured person. The statute does not require that these services be supplied by 'trained medical personnel.' " *Id.* Further, we long ago recognized that family members should be compensated for the services they provide at home to an injured person in need of care. See *id.* at 178-181; *Visconti, supra*; see also *Reed v Citizens Ins Co of America*, 198 Mich App 443, 453; 499 NW2d 22 (1993), overruled on other grounds in *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521 (2005). Here, there is no dispute that

24-hour attendant care is necessary for plaintiff. Rather, defendant argues that this "Court should conclude that judgment notwithstanding the verdict should have been granted because the jury's verdict unavoidably was based on agency rates."

We reject defendant's argument for two reasons. First, as stated above, the jury was instructed, without objection, that "[c]omparison to rates charged by institutions provides a valid method for . . . placing a value on comparable services." Permitting this instruction to be given to the jury without objection amounts to a waiver of the issue whether the jury could base its finding of reasonable compensation on the rates health care agencies might charge for similar services. E.g., *Kohn v Ford Motor Co*, 151 Mich App 300, 310; 390 NW2d 709 (1986). A party may not waive objection to an issue and then argue on appeal that the resultant action was error. *Czymbor's Timber, Inc v City of Saginaw*, 269 Mich App 551, 556; 711 NW2d 442 (2006); *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001).

Second, viewing the evidence in a light most favorable to plaintiff, we conclude that the jury verdict does not necessarily reflect that the jury based its award on the rates a health care agency would charge to provide services similar to those provided to plaintiff by Andrew. There was testimony that an agency would charge as much as $3,205,125 to provide the same care that plaintiff received, which after subtracting the amount that defendant had already paid Andrew, amounts to over $2.4 million in unpaid attendant care costs. The jury's verdict of $1,730,723.67 is substantially below this amount. Further, plaintiff presented evidence relating the overtime rates and shift premiums that would be paid to attendant care providers qualified to care for plaintiff. This evidence is appropriate and

independent of any evidence of the rates charged by health care agencies for attendant care services.

The only legally relevant question presented to the jury was whether the compensation defendant paid to Andrew was reasonable. The record contains sufficient evidence to conclude that the jury rejected defendant's position. Substantial evidence was introduced chronicling Andrew's everyday care of plaintiff. Not only did Andrew provide care consistent with that of a licensed health care professional, but ample evidence was presented to support the conclusion that Andrew's care was more conducive to plaintiff's care, recovery, or rehabilitation than care that could have been provided by a licensed health care professional. The evidence established that Andrew provided plaintiff care that nurses ordinarily do not provide, including treatment specific to paraplegic patients.

"[T]he trier of fact will ultimately determine whether a charge is reasonable." *Advocacy Organization for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 379; 670 NW2d 569 (2003), citing *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990). The litigants zealously argued their respective cases to the jury. Although the verdict itself is large, there is nonetheless evidence to support the jury's determination that the compensation provided to Andrew by defendant was not adequate, given Andrew's training received at the Craig and the actual attendant care Andrew provided to plaintiff. The evidence was sufficient for reasonable jurors to conclude that the reasonable compensation due Andrew was substantially more than the compensation paid by defendant. Thus, the jury verdict must stand.

In a related but separate issue, defendant cites MCL 500.3157, which provides:

A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

Defendant argues that Andrew could not "customarily" charge the hourly rate gleaned from the verdict, which it claims is $53.50. We conclude the above statute does not entitle defendant to relief.

Defendant did not raise or argue this statute in the trial court. This Court need not address issues first raised on appeal. *Booth Newspapers, Inc v University of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Moreover, plaintiff's request that Andrew be paid compensation above that offered by defendant is entirely consistent with this statute, which merely precludes a provider of health care from charging an insurance company more for services than the provider would customarily charge in a case not involving insurance. Because Andrew never provided such services in any prior case (regardless of insurance coverage), this statute cannot apply to his situation. Plaintiff's request for additional compensation payable to Andrew is limited only by the statutory requirement that such compensation be reasonable. Here, the jury determined the reasonable compensation that was due for the services provided by Andrew.

### B. ATTORNEY FEES PURSUANT TO MCL 500.3148(1)

Defendant argues that the trial court clearly erred by awarding plaintiff attorney fees pursuant to MCL 500.3148(1). We agree.

"A trial court's finding of unreasonable refusal or delay will not be reversed on appeal unless it is clearly erroneous." *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 103; 527 NW2d 524 (1994). Clear error exists when this Court is "left with a definite and firm conviction that a mistake has been made." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). Clear error will be found where a trial court does not focus on the facts surrounding the disputed expenses, but instead concludes that the refusal to pay was unreasonable because the jury awarded the claimed expenses. *McCarthy, supra* at 105.

The no-fault act contains a provision allowing for an award of attorney fees. Specifically, MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

This Court has interpreted this provision of the no-fault act, holding:

> [W]hen considering whether attorney fees are warranted under the no-fault act, the inquiry is not whether coverage is ultimately determined to exist, but whether the insurer's initial refusal to pay was reasonable. . . . [T]his Court has also explained that a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. [*Shanafelt v Allstate Ins Co*, 217 Mich App 625, 635; 552 NW2d 671 (1996), citing *McCarthy, supra* at 105.]

Defendant specifically argues that there "was, at a bare minimum, a legitimate, bona fide factual basis for [defendant's] decision to challenge plaintiff's claim." We agree.

In the written judgment, the trial court stated:

> The Court having found that the Plaintiff successfully prosecuted this claim for allowable expenses (attendant care benefits) pursuant to the Michigan No-Fault Automobile Insurance Act to a verdict of $1,730,723.67, which included a finding by the jury that benefits were more than 30 days overdue, and the court having found that Defendant Allstate Insurance Company, unreasonably refused in making the proper payment of No-Fault benefits due to Plaintiff . . . .

Notwithstanding the above-cited conclusion, our review of the record reveals no factual findings to support the conclusion reached by the trial court. It appears from the record that the trial court, when awarding attorney fees to plaintiff, only considered the jury's conclusion that Andrew was entitled to greater compensation than that offered by defendant. Thus, we are left with a definite and firm conviction that the trial court simply based its conclusion on the jury's verdict. This was error.

Moreover, we conclude as a matter of law that defendant satisfied its burden of establishing that its initial refusal to pay Andrew more than $166,000 a year plus health care benefits as compensation for the attendant care provided to plaintiff was based on a bona fide and legitimate dispute over the compensation due Andrew under the no-fault act. Neither the medical community nor the legal community has established a hard and fast rule for determining the reasonable rate of compensation due unlicensed individuals who provide necessary health care services to family members. While consideration of rates paid to licensed and trained health care providers is appropriate, the law does not require that unlicensed individuals who have not earned a degree in a pertinent health care profession be paid the same compensation paid to licensed health care professionals.

It can hardly be disputed that the greater the time a health care professional invests in his or her education and training, the greater the compensation would be for that professional. Andrew received specialized training to allow him to provide professional quality care to his son in an array of disciplines. However, Andrew's training was provided over the course of four months. Andrew did not invest years to obtain an education and specialized training to become a medical professional. Quality care made possible by the dedication and love of family members is often preferable to institutional care. Yet, this Court has recognized that family-provided accommodations are generally less costly than institutional care. *Reed, supra* at 452. Under these circumstances we cannot conclude that defendant acted unreasonably when it offered to compensate Andrew at the lower end of the range of what a licensed and formally educated health care professional might expect to command in the open market.

Further, we cannot conclude that the rate of compensation paid by defendant to Andrew was unreasonable, given that Andrew alone provided the 24-hour care afforded plaintiff. There is no doubt that Andrew is skilled in the care and needs of plaintiff. There is also no doubt that Andrew is a loving, devoted, and admirable father. However, it should not be overlooked that it is not possible and, in fact, it is unhealthy for an individual to provide 24-hour care to another without also caring for one's self. Out of necessity there is time in each day when Andrew is required to care for himself rather than plaintiff. Thus, in the process of arriving at a reasonable rate of compensation for Andrew, it was reasonable for defendant to elect not to factor in a shift premium for working in excess of eight hours a day.[7]

---

[7] We recognize that it appears very likely that the jury rejected this position. However, the mere fact that the jury rejects a position does not, by itself, render that position unreasonable.

Finally, in determining whether defendant acted in good faith and had a legitimate question of factual uncertainty about the proper compensation payable to plaintiff for the care rendered by Andrew, we note that of the several hundred bills for plaintiff's medical care, this was the only area of dispute. Plaintiff was not denied necessary services as a result of this dispute. The evidence supports the conclusion that had Andrew ceased providing care to plaintiff, defendant would have retained and paid for all professional health care services necessary to provide for plaintiff's needs. This is not a case where defendant simply refused to pay for services. Rather, defendant paid plaintiff the amount it deemed fair and reasonable and disputed the remainder of the amount sought by plaintiff.

For these reasons, we conclude that defendant did not unreasonably delay in making proper payment to plaintiff. The portion of the judgment awarding attorney fees pursuant to MCL 500.3148(1) is reversed and the award of $274,750 in attorney fees is vacated.[8]

### C. SANCTIONS PURSUANT TO MCR 2.403

On cross-appeal, plaintiff argues that the trial court erred by refusing to award plaintiff attorney fees as case evaluation sanctions pursuant to MCR 2.403, in addition to the fees awarded under the no-fault act, MCL 500.3148. This specific issue is rendered moot by our reversal of the award of attorney fees under MCL 500.3148. On remand, the trial court shall determine whether plaintiff is entitled to case evaluation sanctions pursuant to MCR 2.403. To the extent case evaluation

---

[8] Because we vacate the award of attorney fees, defendant's claim that the trial court abused its discretion by awarding plaintiff attorney fees at an hourly rate of $500 for 549.5 hours is rendered moot.

sanctions are appropriate, the trial court shall not rely on its prior assessment of attorney fees under MCL 500.3148.

In assessing attorney fees under the no-fault act, the trial court awarded a $500 hourly rate for four different attorneys and multiplied that rate by 549.5 hours, the number of hours plaintiff's counsel claimed were expended in litigating this matter. The trial court did not scrutinize the number of hours claimed, nor did the trial court differentiate the hourly rate of the various attorneys on the basis of their skill and experience.

Our Supreme Court recently addressed the proper method for determining an award of attorney fees under MCR 2.403. In *Smith, supra* at 530-531, the Supreme Court held that

> a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services. . . . In determining this number the court should use reliable surveys or credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case . . . . The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee.

The Supreme Court added that this preliminary number may be adjusted upward or downward on the basis of the factors found in Michigan Rule of Professional Conduct 1.5(a) and *Wood v Detroit Automobile Inter-Ins Exch,* 413 Mich 573; 321 NW2d 653 (1982). This process must be employed for each attorney for whom plaintiff claims a right of fee reimbursement under MCR 2.403. On remand, to the extent the trial court finds an award under MCR 2.403 appropriate, it shall follow the formula set forth by our Supreme Court in *Smith.*

D. TWELVE PERCENT INTEREST UNDER
THE NO-FAULT ACT, MCL 500.3142(3)

Plaintiff also argues on cross-appeal that the trial court erred by refusing to continue, pursuant to MCL 500.3142(3), the imposition of 12 percent penalty interest after the entry of judgment and continuing through the satisfaction of judgment. Specifically, MCL 500.3142(3) provides that "[a]n overdue payment bears simple interest at the rate of 12% per annum." Plaintiff argues that until his judgment is satisfied, his claim for benefits under the no-fault act is overdue and, thus, he is entitled to 12 percent interest. We find no merit to this claim.

Interest awardable under MCL 500.3142(3) is a substantive element of the damages suffered by plaintiff. The jury, as fact-finder, was required to determine whether plaintiff was entitled to no-fault insurance benefits and whether such benefits were overdue. If the jury determined that the benefits were overdue, then the jury was required to consider whether penalty interest under MCL 500.3142 should be awarded to plaintiff. See M Civ JI 35.04 and question 9 of the standard verdict form, M Civ JI 67.01.

Plaintiff would have this Court apply MCL 500.3142 to award plaintiff postjudgment interest in addition to interest awarded under the Revised Judicature Act (RJA), MCL 600.6013. MCL 600.6013(8) expressly entitles plaintiff to interest on the judgment (6 percent in this case) accruing from the date the complaint was filed through the date the judgment is satisfied. That interest is awarded on a judgment that includes the 12 percent interest the jury awarded as penalty interest. However, once the judgment is entered, postjudgment interest is limited to the interest rate applicable under the RJA. MCL 600.6013(8). Nothing in the no-fault act

supports the conclusion that a trial court is authorized to enhance the substantive damages determined by the jury. Rather, a trial court must enter a judgment on the jury's verdict and limit its postjudgment activity to the award of any postjudgment interest allowable under the RJA.

Review of the statutory interest provisions under the RJA supports our conclusion. MCL 600.6013 expressly provides for interest to be awarded on judgments through the date of satisfaction of judgment. By so providing, the Legislature displayed its ability and willingness to expressly provide for an award of interest after entry of a judgment. In contrast to the express mandate under the RJA, MCL 500.3142(3) is silent as it relates to the award of penalty interest after entry of the judgment.

Further, the RJA was amended several times after the enactment of Michigan's no-fault act. Some of these amendments provided for the application of different postjudgment interest rates to different types of claims. For example, the Legislature expressly provided that "if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed." MCL 600.6013(7). While the Legislature had the opportunity to apply a unique postjudgment interest rate to claims for personal protection insurance benefits not timely paid under the no-fault act, it did not do so.

Our conclusion is also supported by the general rule of merger of judgments. The Restatement of Judgments 2d, §18, provides in pertinent part that when a judgment is entered in favor of a plaintiff, "[t]he plaintiff

cannot thereafter maintain an action on the original claim, or any part thereof, although he may be able to maintain an action upon the judgment." Comment A to this section of the Restatement explains the notion of merger. It provides, that "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original action is said to be 'merged' in the judgment."

Applying the doctrine of merger to this case, plaintiff's claim for past due benefits was extinguished upon entry of the judgment. Thus, there no longer existed a claim that would be subject to the penalty interest provided under MCL 500.3142(3). Plaintiff's rights attach to the judgment. The only statutory interest rates applicable to a judgment are found in MCL 600.6013. As stated above, MCL 600.6013 does not specifically identify an interest rate on judgments that is unique to plaintiff's personal protection insurance benefits claim.

Plaintiff's reliance on *Johnston v Detroit Automobile Inter-Ins Exch,* 124 Mich App 212; 333 NW2d 517 (1983), although understandable, is misplaced. In *Johnston,* this Court initially addressed whether a plaintiff may recover penalty interest under MCL 500.3142 and interest upon the judgment, MCL 600.6013. In addressing the question, *Johnston* quoted this Court's opinion in *Wood v Detroit Automobile Inter-Ins Exch,* 99 Mich App 701, 709; 299 NW2d 370 (1980), in which the " '[t]rial court awarded the 12 percent interest [MCL 500.3142(3)] on the overdue wage loss payment from the time it became overdue[,] [and awarded] . . . six percent interest [MCL 600. 6013] . . . on the entire judgment from the day the complaint was filed.' " *Johnston, supra* at 214. The *Wood* Court addressed defendant's basic contention

that "the overlapping of the interest provisions was impermissible." This Court rejected defendant's contention and held that interest can be awarded under MCL 600.6013 even though penalty interest had been awarded under MCL 500.3142(3).

The *Johnston* Court noted that *Wood* had been affirmed by our Supreme Court, 413 Mich 573, 589-590; 321 NW2d 653 (1982), and concluded that the trial court correctly ordered both the 6 percent and the 12 percent interest. The *Johnston* Court, *supra* at 215, however, did not end its analysis, but further stated:

> Consequently, plaintiff is entitled to the following interest on his overdue no-fault personal protection benefits: interest at 12% per annum from the time his benefits became overdue on December 12, 1978, until the day before he filed the complaint, February 23, 1979, interest at 18% per annum from February 23, 1979, until June 1, 1980; and interest at 24% per annum from the entry of the judgment until the judgment is satisfied.

There is no dispute that our Supreme Court in *Wood* recognized that the interest provisions overlapped for a period. However, there is no indication by our Supreme Court in *Wood* that this overlapping period continues until the judgment is satisfied. In summarizing the trial court's decision, the Supreme Court stated that "the default judgment awarded plaintiff consisted of $11,708.93 in wage-loss benefits for *14 months and interest at 12%.*" *Wood, supra* at 577 (emphasis added). The Court then stated that "[i]n addition, plaintiff received 6% interest *on the entire judgment.*" *Id.* (emphasis added). Significantly, the Court identified that the 12 percent penalty interest was imposed only for 14 months, and that the 6 percent RJA interest was "on the judgment." Had the Court held the view that the 12 percent penalty interest continued until satisfaction of

judgment, the Court would not have indicated that the 12 percent penalty interest rate was assessable only for the 14-month period when benefits were overdue. The question of when penalty interest under MCL 500.3142(3) ends was simply not before our Supreme Court in *Wood*. No Michigan court has since addressed this issue. See *Shanafelt, supra* at 644;[9] *McMillan v Auto Club Ins Ass'n,* 195 Mich App 463; 491 NW2d 593 (1992). Thus, we conclude that *Johnston* misapplied the holding in *Wood* to extend the penalty interest rate under MCL 500.3142(3) to the satisfaction of judgment.[10]

Simply put, a court is not authorized to continue the work of a jury post verdict. Plaintiff was entitled to penalty interest as found by the jury. Plaintiff was also entitled to interest on the judgment authorized under the RJA from the filing of the complaint through satisfaction of judgment. However, MCL 500.3142(3)

---

[9] Some legal commentators have cited *Shanafelt,* for the proposition that interest awardable under MCL 500.3142(3) runs from the date of the filing of the complaint to the date of the satisfaction of judgment. This notion was apparently born from Westlaw's summary headnote 10, which provides:

No-fault insurer's wrongful refusal to pay personal protection insurance (PPI) benefits entitled insured to penalty interest and interest from date of filing of complaint to date of satisfaction of judgment, even though health insurer had paid insured's medical expenses; recovery under second, distinct contract with another legal entity was immaterial. M.C.L.A. §§ 500.3142, 600.6013.

Westlaw's summary and conclusion are wrong. Nothing in the text of the *Shanafelt* opinion supports this proposition. The question whether interest under MCL 500.3142 runs to the satisfaction of judgment was simply not addressed by the *Shanafelt* Court.

[10] Because *Johnston* was decided before November 1, 1990, we are not required to convene a conflict panel to reach this conclusion. MCR 7.215(J)(1).

does not entitle plaintiff to judicial enhancement of the substantive damages awarded by the jury.

### E. ATTORNEY FEES ON APPEAL

Lastly, plaintiff seeks an award of appellate attorney fees. We conclude that plaintiff has not established a claim for appellate attorney fees under MCL 500.3148(1) or MCR 7.216(C)(1).

"[A]ttorney fees for services on appeal can be awarded under MCL 500.3148(1) . . . ." *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 691; 476 NW2d 487 (1991). However, it is the trial court, not this Court, that considers claims for attorney fees under MCL 500.3148(1). *Id.* ("the trial court is to consider services rendered on appeal"). Accordingly, plaintiff's claim under MCL 500.3148(1) must be rejected.

Plaintiff also has not established a claim for attorney fees under MCR 7.216(C)(1). "Sanctions requested for a vexatious appeal are governed by MCR 7.216(C)(1)." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 60; 698 NW2d 900 (2005). MCR 7.216(C) provides:

> (1) The Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8), assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because
>
> (a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal; or
>
> (b) pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety,

violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.

(2) Damages may not exceed actual damages and expenses incurred by the opposing party because of the vexatious appeal or proceeding, including reasonable attorney fees, and punitive damages in an added amount not exceeding the actual damages. The court may remand the case to the trial court or tribunal for a determination of actual damages.

MCR 7.211(C)(8) provides:

Vexatious Proceedings. A party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under this rule. A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule. A party may file a motion for damages or other disciplinary action under MCR 7.216(C) at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious.

MCR 7.216(C)(1) indicates that a motion for sanctions must be filed pursuant to MCR 7.211(C)(8), and MCR 7.211(C)(8) provides that a request for sanctions must be made by motion, not in a brief. Here, plaintiff has failed to file a motion, as required by the court rule. Moreover, because defendant has prevailed in part in this appeal, we cannot conclude that defendant's appeal was vexatious.

### III. CONCLUSION

We affirm the denial of the motion for JNOV. We affirm the denial of a postjudgment award of penalty interest under MCL 500.3142(3). We reverse the award of attorney fees under MCL 500.3148. We reverse the trial court's denial of a reasonable attorney fees under MCR 2.403. We vacate the award of attorney fees and

remand for a determination of reasonable attorney fees, if any, awardable under MCR 2.403 and consistent with *Smith*.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.