*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONIQUE EUBANKS,

      Plaintiff-Appellant,

v

STEPHEN HENDRIX,

      Defendant-Appellee.

UNPUBLISHED
May 23, 2019

No.  344102
Wayne Circuit Court
Family Division
LC No.  16-111812-DC

Before:  MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's judgment for custody, support, and parenting time, that awarded the parties joint custody and equal parenting time of their minor child.  On appeal, plaintiff contends that the trial court (1) forced her to comply with an unenforceable settlement agreement, (2) erroneously calculated child support, and (3) exhibited bias in favor of defendant.  Defendant argues that plaintiff's appeal is vexatious and defendant should therefore be awarded damages.  For the reasons explained below, we vacate the judgment for custody, support, and parenting time, and remand to the same trial court for proceedings consistent with this opinion.

## I.  THE SETTLEMENT AGREEMENT

Plaintiff first contends that the trial court erred by forcing the parties (or, more precisely, her) to accept a settlement agreement that was never signed, and the terms of which were never placed on the record.

The legal principles applicable to the construction and interpretation of contracts applies with equal force to our review of settlement agreements, which are of course also contracts. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006), citing *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994).  "The existence and interpretation of a contract are questions of law reviewed de novo," *Kloian*, 273 Mich App at 452, citing *Bandit Indus, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511;

620 NW2d 531 (2001), as is the interpretation and application of court rules, *Dykes v William Beaumont Hosp*, 246 Mich App 471, 482-483; 633 NW2d 440 (2001).

A valid, enforceable contract requires an offer, an acceptance that is "unambiguous and in strict conformance with the offer," and "mutual assent or a meeting of the minds on all essential terms." *Kloian*, 273 Mich App at 452-453 (quotation marks and citations omitted). Trial courts are required to enforce unambiguous contracts according to their terms, but are prohibited from entering orders "pursuant to the consent of the parties which deviate[] in any material respect from the agreement of the parties." *Id*. at 461 (quotation marks and citations omitted). Additionally, "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." MCR 2.507(G).

With respect to certain domestic relations matters, MCR 3.216(H)(8) provides that "[i]f a settlement is reached as a result of . . . mediation, to be binding, the terms of that settlement must be reduced to a signed writing by the parties or acknowledged by the parties on an audio or video recording. After a settlement has been reached, the parties shall take steps necessary to enter judgment as in the case of other settlements." Finally, and separate from the question of whether an enforceable settlement agreement exists in the first place, " '[t]he finding of the trial court concerning the validity of the parties' consent to a settlement agreement will not be overturned absent a finding of an abuse of discretion,' " which occurs when the court chooses an outcome that falls outside the range of principled outcomes. *Rettig v Rettig*, 322 Mich App 750, 754; 912 NW2d 877 (2018) (quotation marks and citations omitted).

We first recognize that there is no dispute that the terms of any agreement reached at mediation were never reduced to a signed writing or recorded by audio or video, as required by MCR 3.216(H)(8). Consequently, any purported mediation-based agreement could not, absent any other valid proof of a settlement, be the basis for the judgment.[1] However, at the September 27, 2017 hearing, held one day after the mediation, the parties placed a partial agreement on the record, in compliance with MCR 2.507(G). At that hearing, relative to the purported agreement reached at mediation, the trial court indicated that its understanding as to the "gist" of the agreement was that the parties were to continue with joint physical and legal custody and equal parenting time. Plaintiff agreed on the record with that statement, and the court found that arrangement to be in the best interests of the child. Consequently, the agreement placed on the record and agreed to by plaintiff was binding upon her.

The fact that this agreement as to custody and parenting time did not resolve all the disputes between the parties,[2] with the court recognizing that "some other little things"

---

[1] At the May 14, 2018 hearing, the trial court recognized several times that there was no binding agreement from the mediation session.

[2] Or, stated differently, neither the court nor the parties set out on the record the remainder of the agreement purportedly made at mediation.

purportedly agreed to at mediation were going to be added to the judgment, does not render the partial agreement invalid. First, as noted, the agreement was in compliance with MCR 2.507(G). Second, parties are always permitted to voluntarily resolve part of their disputes, and leave the remainder for court resolution. See, generally, *Brucker v McKinlay Transport, Inc*, 454 Mich 8, 18 n 9; 557 NW2d 536 (1997). This frequently occurs in all types of civil cases, including family law cases. See *Washington v Washington*, 283 Mich App 667, 668-669; 770 NW2d 908 (2009) (recognizing parties partially settled their dispute through mediation). That is, of course, precisely what occurred at the September 2017 hearing, putting to rest the dispute regarding custody and parenting time. And, as the trial court noted, the remaining issues required further resolution by the court.

Defendant argues that because the parties went through the items in the judgment for custody line-by-line at the May 14, 2018 hearing, and plaintiff declined the trial court's offer to have a trial and permitted her attorney to sign the judgment for custody, the May 14, 2018 judgment for custody is a settlement agreement in and of itself. We conclude otherwise.

First, plaintiff herself expressed her desire to have a trial at the May 14, 2018 hearing no less than three times. Second, as plaintiff notes on appeal, her attorney explicitly wrote above her signature on the judgment for custody that the signature was "[a]s to form," and a consent judgment "requires approval as to both form and substance." *Union v Ewing*, 372 Mich 181, 186; 125 NW2d 311 (1963). Moreover, even had plaintiff's counsel affixed her signature to the order and indicated approval as to both from and substance, a consent judgment still does not exist unless there is some independent evidence that the parties actually stipulated to the outcome. *Ahrenberg Mech Contracting, Inc v Howlett*, 451 Mich 74, 78-79; 545 NW2d 4 (1996). In fact, the trial court so strongly recognized that plaintiff did not consent to the judgment for custody that it chose to go through the proposed judgment line-by-line partially in anticipation of her appeal. Thus, defendant's argument that a binding agreement on matters other than custody and parenting time came out of the May 14, 2018 hearing is without merit, and plaintiff is entitled to a trial on these remaining, unresolved issues.[3]

## II. CALCULATION OF CHILD SUPPORT

Plaintiff next contends that the trial court erred when it adopted the referee's support recommendation because the referee erroneously calculated defendant's income. Specifically, plaintiff contends that, in determining defendant's net income, the referee erroneously deducted defendant's personal vehicle expenses in violation of 2017 MCSF 2.01(E)(4)(e)(vii). Even to the extent that defendant primarily used the vehicle for business purposes, plaintiff contends that the trial court should have considered the percentage of time defendant used the vehicle as his personal vehicle in determining defendant's income. We agree.

---

[3] The trial court's resolution of the remaining issues through argument by counsel was not the appropriate means of decision. Absent a settlement, or an explicit agreement waiving a trial, the court should have taken evidence and then resolved the remaining issues.

"Generally, child support orders, including orders modifying child support, are reviewed for an abuse of discretion." *Clarke v Clarke*, 297 Mich App 172, 178-179; 823 NW2d 318 (2012). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). Questions of law, including whether the trial court properly applied the Michigan Child Support Formula (MCSF), are reviewed de novo. *Clarke*, 297 Mich App at 179, citing *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). Factual findings are reviewed for clear error. *Id*.

2017 MCSF 2.01(E)(4)(e)(vii) provides:

2.01(E) Self-Employed Individuals, Business Owners, Executives, and Others

* * *

(4) For purposes of this subsection, income includes amounts that were not otherwise included as income elsewhere in this chapter. Pay special attention to the following forms of compensation:

* * *

(e) Deductions for Tax Purposes. For a variety of historical and policy reasons, the government allows considerable deductions for business-related expenses before taxes are calculated. Those same considerations are not always relevant to monies a parent should have available for child support. Therefore, some deductions should be added back into a parent's income for purposes of determining child support, including:

* * *

(vii) Personal automobile repair and maintenance expenses.

Thus, while business-related vehicle expenses are deductible for the purpose of determining an individual's net income under the child support formula, personal vehicle expenses are not. As noted by defendant, in calculating defendant's income, the referee only deducted what it determined to be *business* vehicle expenses from defendant's overall expenses. The referee explicitly noted in its recommendation: "[Defendant] stated he used his leased vehicle 100% for business. The total monthly cost for [defendant's] vehicle including registration, gas & oil, insurance and parking and tolls is $1[,]419.85 per month. This is a total of $17[,]038.20 per year. This was subtracted from gross expenses to yield a gross annual income of $77[,]652.00." Plaintiff's argument on appeal, however, is that some of the vehicle expenses deducted were *actually* personal expenses.

Indeed, defendant initially testified that the vehicle at issue was, in fact, his personal vehicle, but that he wrote it off as a business vehicle for tax purposes. Defendant later testified

that the "majority of th[e] vehicle [was] used for business." Defendant indicated that he used the vehicle for personal purposes approximately 17% of the time, and that he spent most of his time riding with his wife in her personal vehicle.[4] When ultimately rendering the recommendation, however, the referee seemed to ignore defendant's statements and simply noted, apparently based upon interrogatories provided prior to defendant's testimony, that defendant "used his leased vehicle 100% for business."

Notably, it is the job of the trial court to weigh the evidence and determine the credibility of the witnesses. *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010). In this case, however, although the trial court had a tax return and interrogatories that might have said otherwise, defendant explicitly admitted to the referee in his testimony that some of the vehicle expenses reflected in those documents were, in fact, personal expenses. Then, on de novo review before the trial court, defendant acknowledged his admission, but mischaracterized the referee's recommendation: "We discussed the vehicle. The vehicle was used for mostly business and also used for personal. I think that's also what [the referee] might have put in the recommendation. She assessed it at 83 percent. It's a business and personal vehicle."[5] Somewhat ironically, what defendant mischaracterized about the referee's recommendation is the primary basis for plaintiff's argument on appeal. In any event, either defendant lied to the Internal Revenue Service (IRS) or defendant lied to the trial court, but given defendant's admission, either the referee or the trial court should have questioned defendant further about the extent to which his vehicle expenses were for personal purposes in order to calculate defendant's income pursuant to the MCSF. Because they did not, they failed to properly apply the MCSF.

Plaintiff also contends that the trial court abused its discretion by overlooking discrepancies between defendant's bank records and tax returns. Specifically, plaintiff notes that defendant's bank records indicate that more money was deposited into defendant's business bank accounts than defendant reported in gross receipts on his tax returns. While this might be of interest to business associates or the IRS, defendant explained to the trial court on multiple occasions that he frequently borrowed money from his business accounts in order to cover personal expenses, and that defendant would then deposit that money from his personal bank account back into his business accounts when it became available. This may explain why there might have been more deposits into defendant's business accounts than reflected as actual revenue, and exemplifies why, at the very least, it was not outside the range of reasonable and principled outcomes for the trial court not to linger on the perceived discrepancy.

---

[4] Plaintiff briefly argues that the trial court failed to consider that defendant did not marry his wife until August 2017, and thus, defendant was likely using his own vehicle prior to that point. Defendant indicated in his testimony, however, that he was living with his wife as early as 2016.

[5] Initially, it seemed that the referee was not going to allow the 15% to 17% of defendant's vehicle expenses that constituted personal vehicle expenses to be deducted from his overall expenses, but in the actual recommendation, the referee seemed to forget defendant's admissions and acted as though the vehicle was used solely for business purposes.

Plaintiff next alleges that the trial court abused its discretion by failing to enforce its own discovery order against defendant whilst simultaneously denying plaintiff an adjournment of a de novo review of child support based upon defendant's failure to provide that same discovery.[6] Plaintiff also alleges that the trial court abused its discretion by failing to award attorney fees when plaintiff was forced to file motions to enforce the discovery order. We disagree.

A trial court's decisions as to attorney fees and whether to grant or deny discovery are reviewed for an abuse of discretion. *Keinz,* 290 Mich App at 141; *Shinkle v Shinkle (On Rehearing),* 255 Mich App 221, 224; 663 NW2d 481 (2003). Although the trial court determined at a hearing on January 12, 2018, that plaintiff was entitled to certain discovery, the court failed to issue a written order to that effect. Plaintiff also failed to provide a proposed order until two months after the hearing at which the trial court stated that it would issue the discovery order. When plaintiff did file a proposed order, defendant filed objections, contending that it went beyond the scope of the discovery that was orally granted. Those objections were heard at a hearing on May 4, 2018, at which the trial court elected to resolve the issue by allowing plaintiff's accountant access to any financial documentation in the possession of defendant's accountant. Notably, plaintiff did not object at the time to that resolution, and we hold that the resolution, which was premised on expediency, was not outside the range of reasonable and principled outcomes.

With respect to plaintiff's oral motion for attorney fees, plaintiff sought compensation from defendant for the fact that plaintiff was forced to file a motion to enforce the discovery order, but the trial court noted:

> The [discovery] order didn't get entered. So, who's the onus on [to] prepare a new order[?] If we ruled on it in a seven day hearing it's water under the bridge now guys. It didn't get done. It should have gotten done. Lesson learned on this one.

We agree that it was not necessarily defendant's fault that an actual discovery order was never entered, nor was it clear from the record that defendant had resisted complying with the discovery that was orally discussed, and accordingly, the trial court's decision to deny attorney fees was not outside the range of reasonable and principled outcomes.

III. JUDICIAL BIAS

We flatly reject plaintiff's contention that the trial judge exhibited bias and should be disqualified.

---

[6] Plaintiff also suggests that the trial court erred in denying an adjournment because plaintiff should have been permitted time to allow her accountant to testify. However, we note that plaintiff did not request an adjournment after her accountant indicated that they would not be prepared to testify at the May 14, 2018 hearing, and instead, voluntarily chose to rely on the testimony of defendant's accountant alone.

While this Court ordinarily reviews a trial court's decision regarding judicial bias for an abuse of discretion, *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001), unpreserved arguments[7] of judicial bias are reviewed for plain error affecting a party's substantial rights, *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008) (quotation marks and citations omitted). An error affects substantial rights when it impacts the outcome of the proceedings. *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017).

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). Disqualification is warranted where a "judge is biased or prejudiced for or against a party or attorney," where a judge has exhibited "a serious risk of actual bias impacting the due process rights of a party," or where there is an appearance of impropriety. MCR 2.003(C)(1)(a) and (b); *Cain v Mich Dep't of Corrections*, 451 Mich 470, 494-496; 548 NW2d 210 (1996). Actual bias tends only to exist where a judge displays " 'a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Cain*, 451 Mich at 496, quoting *Liteky v United States*, 510 US 540, 555; 114 S Ct 1147; 127 L Ed 2d 474 (1994). In the absence of actual bias, "disqualification is warranted 'where there are circumstances of such a nature to cause doubt as to [the judge's] partiality, bias, or prejudice.' " *Ireland v Smith*, 214 Mich App 235, 250; 542 NW2d 344 (1995) (citation omitted; alteration in original); aff'd as mod 451 Mich 457 (1986). Disqualification for the appearance of impartiality "is only constitutionally required in the most extreme cases." *Cain*, 451 Mich at 498. Finally, "the party who challenges a judge on the basis of bias or prejudice must overcome a heavy presumption of judicial impartiality." *Id*. at 497.

Plaintiff's contention that the trial court exhibited bias by expressing concerns over resolving the case in a timely manner, and by failing to enforce its own discovery order, is without merit. Judicial bias can rarely be shown through judicial decisions, *Band v Livonia Assoc*, 176 Mich App 95, 118; 439 NW2d 285 (1989), and this is not one of those rare cases. Nothing in the record reveals any sort of favoritism or bias on the part of the trial court, and the failure to enter a written discovery order seems to have been the product of confusion and a failure of oversight. The presumption of impartiality remains solidly in place on this record.

Finally, plaintiff contends that the trial court expressed bias when it gave its opinion on the best interests of the minor without ever having taken any evidence in the case. At the September 27, 2017 hearing, the trial court noted:

> The Court will find that this arrangement is in [CH's] best interest. Typically, we interview the minor child. I am not going to interview the minor child because FAME already talked to you both. I have a confidential [sic]. And regardless of who [CH] tells me he wants to live with, it is one-twelfth of the factors. And

---

[7] Plaintiff failed to raise the issue of judicial bias below.

based on everything else, I'm saying it would probably end up the same way anyway.

Again, plaintiff fails to explain how this statement exhibits bias or an appearance of impropriety. The trial court was simply explaining that it was not necessary to interview the minor child to find that, what it believed was an enforceable settlement agreement, was in the best interest of CH. Moreover, rather than expressing an uninformed opinion as to CH's best interests, the trial court had already conducted three hearings with the parties, had a Friend of the Court report as to the best interests of CH, and had the referee recommendation that was based upon three additional hearings. There is not a hint of bias or impartiality on this record.

## IV. DEFENDANT'S REQUEST FOR DAMAGES

Finally, defendant contends that plaintiff's appeal is vexatious and that defendant should therefore be entitled to costs and fees. But defendant makes this argument without raising the issue in a proper motion pursuant to MCR 7.216(C)(1). It is therefore not properly before the Court. *Edge v Edge*, 299 Mich App 121, 129 n 4; 829 NW2d 276 (2012). See also *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 182; 761 NW2d 784 (2008) (declining to address the plaintiff's request for damages because the request came from a brief on appeal rather than a motion pursuant to MCR 7.216(C)(1)).[8]

The judgment is vacated in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan

---

[8] Were we to reach the substance of defendant's claim, however, we would hold that plaintiff's appeal is not vexatious. There is no evidence that plaintiff's appeal was made for the purposes of hindrance or delay, and particularly with respect to child custody and support, plaintiff raised several meritorious issues to be determined on appeal. See *Silich v Rongers*, 302 Mich App 137, 152; 840 NW2d 1 (2013) (an appeal is not vexatious simply because aspects of an argument are unsuccessful). Nor is it evident from plaintiff's brief on appeal that plaintiff disregarded the requirements of a fair presentation of the issues to the court.