*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRAIG WILLIAMSON,

Plaintiff-Appellant,

v

RIVERVIEW FIRE DEPARTMENT and CITY OF
RIVERVIEW,

Defendants-Appellees.

UNPUBLISHED
May 13, 2021

No. 352771
Wayne Circuit Court
LC No. 18-006010-CD

Before: BOONSTRA, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition.[1]  We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff had been employed as a part-time firefighter at the Riverview Fire Department (the "fire department") since 1978.  By 2011, plaintiff had achieved the rank of captain.  At that time, plaintiff became concerned about potential timecard fraud by another firefighter, Donald Meyer (Meyer).  Specifically, plaintiff suspected that Meyer was inflating his hours worked by claiming additional hours on his timecard.  Plaintiff reported his concerns to Mitch Jensen, then-Deputy Chief of the fire department (Deputy Chief Jensen), and later to Don Ginestet, then-Chief of the fire department (Chief Ginestet).  Plaintiff testified at his deposition that when no action

---

[1] Plaintiff originally filed a complaint against the Riverview Fire Department and the city of Riverview.  During the proceedings below, the trial court found that the fire department was not a proper defendant and dismissed the case against the Riverview Fire Department.  To the extent the Riverview Fire Department is a separate legal entity from the city of Riverview, it is not a party to this appeal; nor has plaintiff challenged its dismissal from the case.  Our use of "defendant" in this opinion refers to the city of Riverview.

was taken to rectify his concern, he "gave up." However, according to plaintiff, defendant's employees undertook a series of retaliatory actions against him over the next several years.

## A. THE LETTER-OPENING INCIDENT

In the summer of 2013, contentious negotiations arose between defendant and the Riverview firefighters' union. During these negotiations, plaintiff was accused by the president of the firefighter's union and fellow firefighter, Greg Wooliver (Wooliver), of opening his mail. Chief Ginestet began an investigation into the allegations; however, Chief Ginestet resigned before the investigation was complete. The new Fire Chief, Clifford Rosebohm (Chief Rosebohm), continued the investigation and ultimately conducted a disciplinary hearing on the matter. After the hearing, Chief Rosebohm notified plaintiff he could either resign or face other disciplinary actions. Plaintiff chose to resign—however, he later filed a grievance against defendant regarding the matter, and the matter was eventually arbitrated. Two years later, in 2015, the arbitrator's award restored plaintiff to his position and plaintiff returned to work as a captain.

## B. TIMECARD INVESTIGATIONS

In the spring of 2016, plaintiff again became concerned that Meyer was continuing to inflate the hours worked on his timecard. After plaintiff raised his concerns with Chief Rosebohm, the Chief ordered plaintiff to complete an internal audit of Meyer's timecards. According to plaintiff, Chief Rosebohm ordered plaintiff to complete the audit because plaintiff was "the one b****ing about it." Plaintiff discovered evidence of discrepancies in Meyer's timecards, and reported those discrepancies to Chief Rosebohm. Chief Rosebohm referred the case to the Michigan State Police (MSP) for further investigation. An MSP officer interviewed plaintiff as part of the MSP investigation into Meyer. Plaintiff stated at his deposition that the MSP officer told plaintiff that he had a "target" on his back and that "Chief Rosebohm could care less about Meyer stealing this money. All he wants to do is fire you."

Meyer was not immediately notified of the investigation, and was allowed to continue his employment with the fire department. During this time, however, Chief Rosebohm became concerned that firefighter Scott Brighton (Brighton) was also committing timecard fraud. Consequently, on April 17, 2017, Rosebohm again ordered plaintiff to conduct an internal audit, this time of Brighton's suspected timecard fraud.

## C. THE MOTORCYCLE ACCIDENT

Several days after Rosebohm ordered plaintiff to begin the audit of Brighton, on April 23, 2017, plaintiff was involved in a minor automobile accident while driving a fire department vehicle he had borrowed to run a personal errand while on duty. When he returned to the fire station, he backed the vehicle into a garage bay, hitting firefighter Erik Miracle's (Miracle) motorcycle. There was no damage to the fire department vehicle, but the motorcycle had minor damage. Per fire department policy, plaintiff was required to immediately report the accident to his superior officers and to submit himself for intoxicant testing. Plaintiff did not complete the intoxicant testing and he did not report the accident to his superiors until the next day. Miracle testified at his deposition that plaintiff had asked him to "just tell the insurance company that it was a hit and run in the parking lot." Miracle stated that he "couldn't bring [himself] to commit fraud" and decided to report the accident to his superior officers.

In October 2017, plaintiff was notified he was being charged with violating a number of fire department policies related to the motorcycle accident and was scheduled for another disciplinary hearing. After the February 28, 2018 hearing, plaintiff received four memorandums articulating the disciplinary action to be taken. In addition to oral and written reprimands, defendant elected to suspend plaintiff for 60 days, citing plaintiff's role as a "superior officer" to Miracle, plaintiff's request that Miracle lie to his insurance company, and plaintiff's failure to complete a test for intoxicants.

On May 30, 2018, plaintiff filed suit against defendant, alleging violations of the Whistleblower's Protection Act (WPA), MCL 15.361 *et seq*., by defendant. Specifically, plaintiff argued that defendant's disciplinary actions for the motorcycle accident and the letter-opening incident were taken in retaliation for plaintiff's investigation into the timecard fraud.

## D. THE STAFFING ISSUE

Plaintiff testified that around September 2018,[2] the Riverview Fire Department came under criticism from the fire departments of surrounding towns. Specifically, plaintiff stated that the other fire departments were concerned about the abuse of a "mutual aid"[3] agreement with the other towns, under which defendant would rely on mutual aid resources in lieu of fully staffing its own fire department. On September 6, 2018, the fire department developed a "shift call off and additional shift policy." This policy required that in cases in which the scheduled shift was short of firefighters, "it is the duty officer's responsibility to fill any shifts reported during their shift in strict accordance with this policy."

On September 15 and 16, 2018, there were two shifts that were not fully staffed. Plaintiff was working as the duty officer for these two shifts. Defendant concluded that plaintiff had violated the terms of the "shift call off and additional shift policy" by failing to call all available firefighters to fill the shifts. As a result, on October 9, 2018, plaintiff was notified that the fire department was charging him with failure to follow fire department policies. A disciplinary hearing was conducted on October 15, 2018. After the hearing, plaintiff was suspended for 15 days, with a 90-day reduction in rank to lieutenant. A performance review would be conducted at the conclusion of the 90-day period after plaintiff's return to work as a lieutenant, at which time it would be determined if his status as a captain would be reinstated. Soon after, Chief Rosebohm stepped down as Fire Chief and was replaced by Ron Lammers (Chief Lammers). Plaintiff returned to work, and after 120 days[4] his status as a captain was restored.

Plaintiff filed a supplemental complaint on November 26, 2018, alleging additional incidents of retaliation under the WPA for the staffing issue. During discovery, plaintiff sought to depose Meyer and to extend the close of discovery; the trial court extended the close of discovery

---

[2] About this time, both Meyer and Brighton were fired from the fire department for their actions related to the timecard fraud. They were charged criminally and pleaded guilty.

[3] Mutual aid is process by which a town will offer emergency services to a neighboring town when the neighboring town is short of resources.

[4] Chief Lammers extended plaintiff's status as a lieutenant for an additional 30 days.

from April 10, 2019 to July 10, 2019. After Meyer's deposition and one day before the close of discovery, plaintiff submitted a number of discovery requests to defendant. After the close of discovery, defendant responded by objecting to these requests.

On August 28, 2019, defendant moved the trial court for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing, among other things, that plaintiff had failed to establish a prima facie case of retaliation under the WPA and could not prove that defendant's actions were pretextual. On September 30, 2019, plaintiff moved the trial court to compel defendant's responses to his requests for discovery. After a hearing, the trial court granted defendant's motion for summary disposition, holding that plaintiff's claims regarding the discipline following the 2013 letter-opening incident were barred by the statute of limitations, and that, for the remaining claims, plaintiff had failed to show a causal connection between his protected activity and defendant's disciplinary actions, and had failed to establish that defendant's actions were pretextual. The trial court's decision effectively resolved plaintiff's motion to compel. Plaintiff later moved for reconsideration, which the trial court denied. This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiff argues the trial court improperly granted defendant's motion for summary disposition even though there were genuine issues of material fact with respect to his claims under the WPA. We disagree.

## A. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 638; 692 NW2d 398 (2004). In this case, in reviewing defendant's motion for summary disposition under MCR 2.116(C)(8) and (10),[5] it is clear that the trial court relied on a significant amount of evidence outside the pleadings. "When a motion seeks summary disposition under both (C)(8) and (C)(10), but the parties and trial court rely on matters outside of the pleadings, we review the matter through the lens of (C)(10)." *Mazzola v Deeplands Dev Co LLC*, 329 Mich App 216, 223; 942 NW2d 107 (2019).

"A motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). We review a motion under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "The nonmoving party may not rest on the allegations in the pleadings, but must set forth, through documentary evidence, specific facts demonstrating a genuine issue for trial." *Anzaldua*, 292 Mich App at 630. "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere

---

[5] Defendant does not challenge the trial court's dismissal, on statute of limitations grounds, of his claims related to the letter-opening incident. See MCR 2.116(C)(7).

-4-

conjecture or speculation is insufficient." *McNeil-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

"The moving party has the initial burden to support its claim for summary disposition under MCR 2.116(C)(7) or (10) by affidavits, depositions, admissions, or other documentary evidence." *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005); MCR 2.116(G)(3). However, "[o]pinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; disputed fact (or the lack of it) must be established by admissible evidence." *SSC Assoc Ltd Partnership v Gen Retirement Sys of City of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991). If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Id*. Further, if the moving party asserts that the nonmovant lacks evidence supporting an essential element of the claim, then the burden shifts to the nonmoving party to present such evidence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016).

Some of the issues raised by plaintiff in his brief on appeal were raised for the first time in his motion for reconsideration; they are therefore unpreserved. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) ("Where an issue is first presented in a motion for reconsideration, it is not properly preserved."). Nonetheless, "[t]his Court may review an unpreserved issue if it is an issue of law for which all the relevant facts are available." *Vushaj*, 284 Mich App at 519. We review unpreserved claims of error for plain error affecting substantial rights. *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017), quoting *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

"The interpretation of the WPA presents a statutory question that this Court reviews de novo." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 249; 848 NW2d 121 (2014).

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 506; 778 NW2d 282 (2009), quoting *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).]

## B. ANALYSIS

Plaintiff argues that the trial court erred by determining that plaintiff had not shown a genuine issue of material fact regarding the causal connection between his protected activity under the WPA and defendant's disciplinary action, or shown that defendant's actions were pretextual. We disagree.

-5-

The WPA states, in pertinent part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

Under the WPA, a prima facie case may be made by evidence that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) a causal connection exists between the protected activity and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

"A plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence." *Shaw v Ecorse*, 283 Mich App 1, 14; 770 NW2d 31 (2009). "Direct evidence is that which, if believed, requires the conclusion that the plaintiff's protected activity was at least a motivating factor in the employer's actions." *Id*. When a plaintiff provides a trial court with direct evidence, "the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Cases involving circumstantial evidence, however, require application of the *McDonnell-Douglas*[6] burden-shifting framework. *Debano-Griffin*, 493 Mich at 175-176. "This approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 134; 666 NW2d 186 (2003) (quotation marks and citation omitted). "Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. And, "[i]f a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Id*.

Plaintiff argues that he presented sufficient evidence of a causal connection between his suspensions and demotion and his investigations into timecard fraud. Plaintiff also argues that he presented sufficient facts showing that defendant's actions were a pretext for discrimination. We disagree with both arguments.

As noted, a causal connection may be shown via direct or circumstantial evidence. Direct evidence is that which, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski*, 469 Mich at 133 (quotation marks and citation omitted). To establish a causal connection using circumstantial evidence, the

---

[6] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

"circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). Mere conjecture or speculation "is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." *Id*. (citation omitted). "In other words, the evidence presented will be sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by retaliation." *Shaw*, 283 Mich App at 15. However, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003).

Plaintiff points out that his suspensions and demotion happened about the same time as the timecard investigations, but acknowledges that "[s]omething more than a temporal connection between protected conduct and an adverse employment action" is required. *Id*. Therefore, plaintiff calls our attention to several other facts, which he believes are either direct or circumstantial evidence of a causal connection. These include: (1) that the individuals directing the timecard investigation were the same people who decided the disciplinary actions against plaintiff; (2) that plaintiff was placed on administrative leave after attempting to discuss his second lawsuit with his coworkers; (3) plaintiff's testimony that only probationary firefighters would work with him; (4) Chief Rosebohm's alleged statement that plaintiff should investigate the timecard issue because plaintiff was the "one b****ing about it;" and (5) the purported statement by the unnamed MSP officer that plaintiff has "a target on [his] back" and that Chief Rosebohm wanted to fire plaintiff.

Plaintiff's argument that circumstantial evidence of a causal connection exists because the same people making the decision to discipline plaintiff also had oversight of the timecard investigations is not persuasive. Plaintiff cites to our Supreme Court's decision in *Debano-Griffin*, 493 Mich at 178, in support of this proposition, but his reliance on *Debano-Griffin* is misplaced. In *Debano-Griffin*, our Supreme Court found a causal connection between the employee's whistleblowing activities and the adverse employment action because the people making the decision on the adverse employment action were "direct recipient[s]" of the consequences of the whistleblowing activities. *Id*. That is not the case here—it was Meyer and Brighton, not Chief Rosebohm, who were the "direct recipients" of the consequences of plaintiff's whistleblowing activities; Meyer and Brighton were not involved in the disciplinary process that resulted in the adverse employment actions against plaintiff. Plaintiff presented no evidence that Chief Rosebohm, or other employees of defendant involved in his discipline, faced negative consequences as a result of plaintiff's audit of timecards.

With regard to plaintiff's argument that he was barred from talking with other firefighters about his lawsuit, we note that the first time plaintiff presented this issue to the trial court was in an exhibit attached to his motion for reconsideration, and the issue is therefore unpreserved. *Vushaj*, 284 Mich App at 519. Plaintiff argues that he was barred from talking to other firefighters after he sought their support for this lawsuit during his shift on December 20, 2019. The hearing on defendant's motion for summary disposition took place on November 14, 2019; therefore, plaintiff's December 20, 2019 conversations with the other firefighters had not occurred by the time of the hearing on defendant's motion for summary disposition. Our review of the trial court's decision on defendant's motion for summary disposition is "limited to review of the evidence

properly presented to the trial court," *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 380; 775 NW2d 618 (2009). We therefore decline to consider this argument.[7]

With regard to plaintiff's claim that only probationary firefighters would work with him, we note that plaintiff presents this argument for the first time on appeal, although the support for his argument comes from his own deposition testimony, taken well before the trial court granted defendant's motion for summary disposition. We therefore could decline to consider this argument. See *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 170; 761 NW2d 784 (2008). In any event, we find plaintiff's argument unpersuasive. Plaintiff stated during his deposition that he was "short-staffed" frequently during his shift, and made reference to one shift in which he was scheduled with "a probationary firefighter and no one else." This evidence, even viewed in the light most favorable to plaintiff, does not support his claim that only probationary fire-fighters wanted to work with him, much less that he was being frozen out as retaliation for his work on timecard audits.

Moreover, even if this testimony aligned with plaintiff's argument, it is neither direct nor circumstantial evidence of a causal connection. The evidence does not lead to the conclusion that a causal connection existed. *Sniecinski*, 469 Mich at 133. And while plaintiff states that others did not want to work with him, plaintiff does not attempt to explain or point to any evidence showing *why* other firefighters did not want to work with him. Again, "circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner*, 445 Mich at 164.

Further, we see no merit to plaintiff's arguments regarding Chief Rosebohm's alleged statement that plaintiff should investigate the timecard fraud because plaintiff was the one "b****ing about" the timecard fraud and a statement made by an unnamed[8] MSP officer asserting that plaintiff had "a target" on his back. Plaintiff argues that "the only logical conclusion" of these two statements was that defendant was unhappy with plaintiff's investigation. However, we conclude that trial court was correct in disregarding both statements. When a trial court rules on a motion for summary disposition under MCR 2.116(C)(10), "[o]pinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; disputed fact (or the lack of it) must be established by admissible evidence." *SSC Assoc Ltd Partnership*, 192 Mich App at 364. And, a nonmoving party must support his assertions with "*documentary evidence* [setting forth] specific facts demonstrating a genuine issue for trial." *Anzaldua*, 292 Mich App at 630 (emphasis added). Here, plaintiff's offer of unverified statements by others fails to meet this standard, and are insufficient to establish a genuine issue of material fact.

Plaintiff also argues that the trial court "unwaveringly" accepted as true defendant's recitation of the facts, and thus failed to properly consider plaintiff's position as the nonmoving party under MCR 2.116(C)(10). We disagree that the trial court "unwaveringly" accepted as true

---

[7] Plaintiff does not argue that the trial court erred by denying his motion for reconsideration on the ground that the December 20, 2019 conversations constituted new evidence. See MCR 2.119(F)(3).

[8] Plaintiff later identified this officer in his motion for reconsideration. However, because this information was not before the trial court during the hearing on defendant's motion for summary disposition, this Court will not consider it on appeal. *Bonkowski*, 281 Mich App at 170.

defendant's recitation of the facts—indeed, the trial court stated on the record its belief that plaintiff had satisfied the first two elements of a prima facie case of retaliation, despite defendant's arguments to the contrary. Further, while a motion under MCR 2.116(C)(10) requires a trial court to accept the evidence in a "light most favorable to the nonmoving party," the trial court need not accept facts not properly presented. *Patrick*, 322 Mich App at 605. "The nonmoving party may not rest on the allegations in the pleadings, but must set forth, through documentary evidence, specific facts demonstrating a genuine issue for trial." *Anzaldua*, 292 Mich App at 630. Here, while plaintiff points to a number of factors that he believes show that the trial court did not make all inferences in plaintiff's favor, plaintiff fails to provide any evidentiary support, outside of his own allegations, for these claims.[9]

The trial court did not err in finding that plaintiff failed to establish the causal connection necessary to establish a prima facie case of retaliation under the WPA. See *Sniecinski*, 469 Mich at 134. Therefore, we need not consider plaintiff's additional arguments regarding the trial court's determination that plaintiff had failed to establish that defendant's reasons for discipline were pretextual. *Id.*

## III. DISCOVERY

Plaintiff also argues that summary disposition in favor of defendant was premature, because plaintiff had a pending motion to obtain further discovery at the time the trial court granted defendant's motion. We disagree.

## A. STANDARD OF REVIEW

"Generally, an issue is not properly preserved if it is not raised before, and addressed and decided by, the trial court." *Hines*, 265 Mich App at 443. Plaintiff never argued before the trial court that summary disposition was premature because of the pending hearing on his motion, and the issue is therefore unpreserved. *Id.* We generally review for an abuse of discretion a court's grant or denial of discovery motions. *Dorris v Detroit Osteopathic Hosp Corp*, 220 Mich App 248, 250; 559 NW2d 76 (1996) (quotation marks and citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). However, as stated, we review unpreserved claims of error for plain error affecting substantial rights. *Hogg*, 307 Mich App at 406.

We review de novo questions involving the interpretation of court rules. *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 320; 900 NW2d 680 (2017) (quotation marks and citation omitted).

---

[9] Plaintiff also makes a confusing argument regarding the absence of Miracle's testimony. It appears that plaintiff contends that Miracle's testimony is the only evidence by which defendant could have successfully argued its motion for summary disposition, but plaintiff has not supported this assertion with either facts or law, and has abandoned it. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

## B. ANALYSIS

Plaintiff argues that the trial court's grant of defendant's motion for summary disposition was premature. We disagree. As an initial matter, plaintiff's argument that summary disposition was premature is presented for the first time on appeal, and we could decline to consider it on that basis alone. *Bonkowski*, 281 Mich App at 170. However, this Court may consider the issue "if it is an issue of law for which all the relevant facts are available." *Vushaj*, 284 Mich App at 519. Our review of the record shows that the trial court did not prematurely grant defendant's motion.

A trial court maintains significant control of the timing of the discovery process. MCR 2.401(B)(2) states, in pertinent part:

> the [trial] court shall establish times for events and adopt other provisions the court deems appropriate, including . . . (*iv*) what, if any, changes should be made to the limitations on discovery imposed under these rules and whether other presumptive limitations should be established, [and] (*v*) the completion of discovery.

Even so, plaintiff argues his complaint "was dismissed prematurely, without having a chance to properly obtain evidence through discovery in support of his claims." The discovery requests that plaintiff complains went unanswered were submitted to defendant on the very last day of the discovery period, which had already been extended, in litigation that had been ongoing for over a year. Plaintiff states, as an explanation for the late hour of the requests, that the information sought "arose as a result of Meyer's testimony regarding discipline that had and had not occurred at the time he was employed with Defendant." According to plaintiff, dismissal was premature because the evidence sought would have proven both a causal connection and evidence of pretext for defendant's actions. We disagree. Plaintiff's July 9, 2019 discovery requests sought information that either could have been requested before Meyer's deposition, or was not relevant to the trial court's reason for granting defendant's motion for summary disposition. Given the expansive and broad nature of these requests, and the fact that these requests could have been timely made during the preceding discovery period, plaintiff's July 9, 2019 discovery demand amounted to a "fishing expedition" or delaying tactic, at best. See *VanVorous v Burmeister*, 262 Mich App 467, 477; 687 NW2d 132 (2004) ("Michigan's commitment to open and far-reaching discovery does not encompass 'fishing expedition[s].' "). Consequently, the trial court did not plainly err by granting defendant's motion for summary disposition without first deciding plaintiff's motion to reopen discovery.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola