*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HUSINKA GROUP, LLC, doing business as
CARIAN,

        Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant/Third-Party Plaintiff-
        Appellant,

and

THERASUPPORT REHABILITATION, LLC,

        Third-Party Defendant-Appellee,

and

THERASUPPORT REHABILITATION,

        Third-Party Defendant.

UNPUBLISHED
December 22, 2022

No. 357926
Washtenaw Circuit Court
LC No. 18-001290-NF

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In this no-fault insurance dispute, defendant/third-party plaintiff, Farm Bureau General Insurance Company of Michigan, appeals as of right the final order (1) granting summary disposition to plaintiff, Husinka Group, LLC, and awarding Husinka no-fault benefits, penalty interest, and attorney fees; (2) denying Farm Bureau's motion for summary disposition on its third-party claims against third-party defendant, TheraSupport Rehabilitation, LLC; and (3) dismissing Farm Bureau's claims against TheraSupport. For the reasons explained in this opinion, we affirm in part, vacate in part, and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In November 1988, Roger Taliaferro, who was then 18 years old, suffered a traumatic brain injury in a motor vehicle accident. He is a legally incapacitated individual with a guardian, Jeffrey Fried, and since the accident, Taliaferro has been receiving various medical services. At the time of the accident, Taliaferro was insured under a no-fault insurance policy with Farm Bureau. In 2016, Fried, acting as Taliaferro's guardian, filed suit against Farm Bureau seeking payment of no-fault benefits, including payments of bills for services provided by TheraSupport. The 2016 lawsuit resulted in a settlement between Farm Bureau and Fried, which was signed on May 31, 2018. Under the settlement, Farm Bureau paid $471,500 for the Taliaferro's release of all "past and present" no-fault claims against Farm Bureau, through April 20, 2018. The settlement was paid, and the claims through April 20, 2018, were released.

TheraSupport provides "supported independent living," which, depending on the individual, can include direct care, nursing, therapy, counseling, occupational therapy, speech therapy, vocational rehabilitation, etc. Taliaferro became a resident of TheraSupport's supported living program sometime in 2016. Following the settlement and release, Taliaferro continued to live at, and to receive services from, TheraSupport, and Farm Bureau paid TheraSupport—at a rate of $900 a day—for additional services provided after April 20, 2018.

Husinka, doing business as Carian, is a home-care company that assists clients with activities of daily living. Between February 2017 and November 2018, Husinka provided services to TheraSupport's residents, including Taliaferro. While the earlier lawsuit with Farm Bureau was pending, TheraSupport paid Husinka for its services, and any claims relating to Husinka's services before April 20, 2018, would have been covered by the settlement agreement between Farm Bureau and Taliaferro. After the settlement, Husinka continued to provide services to Taliaferro—at TheraSupport—through November 2018. Beginning for services provided on April 22, 2018, Husinka sought payment of its services directly from Farm Bureau, though there is some uncertainty regarding when Husinka actually submitted proof of loss to Farm Bureau.

In any event, in December 2018, Husinka filed the current lawsuit against Farm Bureau, seeking payment for attendant-care services provided to Taliaferro from April 22, 2018 to November 8, 2018. In total, Husinka sought approximately $85,000 in no-fault benefits, plus penalty interest and attorney fees.[1] Farm Bureau answered the complaint and filed a third-party complaint against TheraSupport. Briefly stated, in responding to Husinka and filing claims against TheraSupport, Farm Bureau contended that its payment of $900 a day to TheraSupport included payment for Husinka's attendant-care services.

The parties filed cross-motions for summary disposition. The trial court ultimately (1) granted summary disposition to Husinka on its claims against Farm Bureau and awarded Husinka $85,542.77 in no-fault benefits, $22,397.63 in no-fault penalty interest, and $26,973.17 in attorney fees; (2) denied Farm Bureau's motion for summary disposition on its third-party complaint against TheraSupport; and (3) dismissed Farm Bureau's third-party complaint. Farm

---

[1] Fried, as Taliaferro's guardian, had assigned Taliaferro's claims—related to services provided by Husinka—to Husinka.

Bureau moved for reconsideration and sought leave to amend its third-party complaint. These requests were denied. This appeal followed.

## II. ENTERING AN ORDER UNDER MCR 2.602(B)

On appeal, Farm Bureau first argues that the final order, entered on December 14, 2020, should be set aside because the trial court failed to properly follow the procedures for entering an order under MCR 2.602(B). This argument lacks merit.

Whether a trial court complied with MCR 2.602(B) when entering an order involves the interpretation and application of the court rules, which is an issue of law that we review de novo. *Jones v Jones*, 320 Mich App 248, 259; 905 NW2d 475 (2017). The procedures for entering a judgment or order are set forth in MCR 2.602(B), which states:

> (B) **Procedure of Entry of Judgments and Orders**. An order or judgment shall be entered by one of the following methods:
>
> (1) The court may sign the judgment or order at the time it grants the relief provided by the judgment or order.
>
> (2) The court shall sign the judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision.
>
> (3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the notice and proof of service along with the proposed judgment or order.
>
> (a) If no written objections are filed within 7 days of the date of service of the notice, the judge shall sign the judgment or order if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter.
>
> (b) Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.
>
> (c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.
>
> (d) The court must schedule the hearing upon filing of the first objection, and the party filing the objection must serve the notice of hearing under subrule (B)(3)(c). Other parties to the action may file objections with the court through the

end of the 7-day period. The court must schedule a hearing for all objections within 14 days after the first objection is filed or as soon as is practical afterward.

(4) A party may prepare a proposed judgment or order and notice it for settlement before the court. Pursuant to MCR 2.119(G)(3)(b), a motion fee may not be charged.

In this case, the trial court dispensed with oral argument on the summary disposition motions as permitted by MCR 2.119(C)(3), and it ultimately entered an order drafted by Husinka, which the trial court signed several weeks after informing the parties of its decision. On these facts, three of the four methods for entering an order clearly were not followed. That is, it is undisputed that the trial court did not sign the final judgment at the time it granted the relief set forth in the order. Although there is no transcript of the trial court's ruling, the parties agree that the trial court informed the parties of its decision—with a phone call from someone on the court's staff—on October 30, 2020. The final order did not enter until approximately six weeks later, on December 14, 2020. Consequently, MCR 2.602(B)(1) does not apply. MCR 2.602(B)(2) appears equally inapplicable because Farm Bureau never approved the form of the final order. MCR 2.602(B)(4) also does not apply because Husinka did not notice a proposed order for settlement before the trial court.

Instead, it appears that the only potentially applicable procedures were those involving the seven-day rule under MCR 2.602(B)(3). These seven-day procedures, however, were not followed to the letter in this case by Husinka. That is, under MCR 2.602(B)(3)(a), Husinka—as the party preparing the order—should have served the other parties with (1) the proposed order and (2) a seven-day notice. Husinka also should have filed the notice, proof of service, and the proposed order with the clerk. See MCR 2.602(B)(3)(a). The record—and the register of actions—do not contain any indication of a proposed judgment, proof of service, or the seven-day notice that Husinka should have filed.

Despite this troubling omission from the record, Farm Bureau conceded in the trial court that Husinka e-mailed a copy of the proposed order to Farm Bureau and the trial court on November 25, 2020. Farm Bureau complains, however, that the order was not timely submitted by Husinka. That is, the trial court rendered its decision on October 20, 2020, and Farm Bureau emphasizes that Husinka submitted its proposed order well after the seven-day period in MCR 2.602(B)(3)(a). However, the court rule provides that the order must be served within "7 days after the granting of the judgment or order, *or later if the court allows*." MCR 2.602(B)(3)(a) (emphasis added). Although there is no ruling in the record to indicate a precise deadline set by the trial court, the trial court evidently approved of Husinka having more time to submit a proposed order.[2] Further, and perhaps most significantly, as noted, Farm Bureau conceded in the trial court that it received a copy of the proposed order on November 25, 2020,

---

[2] Farm Bureau has not provided any authority to suggest that the trial court had to issue a formal ruling allowing more time to file the proposed order. See 3 Longhofer, Michigan Court Rules Practice, Text (7th ed.), § 2602.4, n 4 ("Although MCR 2.602(B)(3) indicates that the court may permit a longer period of time, it does not indicate whether the court may do so informally, i.e., without notice to all parties and an opportunity for them to be heard.").

-4-

and that order did not enter until December 14, 2020. Farm Bureau does not allege—and the facts would not support—that judgment entered before Farm Bureau had an opportunity to read the proposed order and object to the entry of that order. Cf. *Barnes v Mich Nat'l Bank Corp*, 159 Mich App 433, 439; 407 NW2d 23 (1987) (rejecting claim that an order entered in violation of MCR 2.602(B)(3) when, although it was not submitted within seven days, the trial court had discretion to allow more time, the order was served on the opposing party, and the opposing party did "not allege that the judgment was entered before they had an opportunity to read it").

Farm Bureau did not, however, object within seven days of receiving the proposed order. Instead, on the eighth day, December 3, 2020, Farm Bureau filed what it titled a "cautionary statement," urging the trial court not to enter the order drafted by Husinka. And, even when filing this cautionary statement, Farm Bureau did not comply with the procedures for filing seven-day objections. That is, Farm Bureau did not notice the matter for a hearing on objections to the order, nor did Farm Bureau submit an alternative proposed judgment or order. See MCR 2.602(B)(3)(c). Rather than ask to have any objections adjudicated, Farm Bureau suggested that Husinka notice the case for settlement of the order under MCR 2.602(B)(4). In short, Farm Bureau had the opportunity to file objections to the proposed order, and it chose not to do so in the time, or manner, set forth in MCR 2.602(B)(3).

These facts do not entitle Farm Bureau to relief on appeal. Although the procedures used were not a perfect example of the application of the seven-day rule, ultimately, the trial court signed the proposed order as written. Courts speak through their written orders, and by signing the order, the trial court evinced its determination that the order represented its ruling in this case. See *In re Leete Estate*, 290 Mich App 647, 658; 803 NW2d 889 (2010). On this record, Farm Bureau has not shown that any procedural errors related to the entry of the order under MCR 2.602(B) warrant relief on appeal.[3] See MCR 2.613(A).

## III. HUSINKA'S CLAIMS AGAINST FARM BUREAU

Farm Bureau argues that the trial court erred by granting summary disposition to Husinka and awarding Husinka penalty interest and attorney fees. More specifically, Farm Bureau contends that it has a viable defense under MCL 500.3112; that fact questions remain regarding when any benefits became "overdue" as relevant to a determination of penalty interest; and that fact-finding, on properly submitted evidence, is necessary to determine whether attorney fees were warranted and to determine a reasonable amount of attorney fees. We conclude that the trial court did not err by granting summary disposition to Husinka, but we vacate the award of attorney fees and penalty interest, and we remand for further proceedings.

---

[3] To be clear, we do not suggest that the entry of the final order—and Farm Bureau's failure to object to the form of the order under the seven-day rule—precludes Farm Bureau from challenging the merits of the trial court's ruling. Cf. *Ross v Auto Club Group*, 481 Mich 1, 11 n 21; 748 NW2d 552 (2008) (noting that party's acquiescence in entry of final judgment did not constitute a waiver of a substantive claim). We simply find no merit to Farm Bureau's assertion that procedural defects under MCR 2.602(B) necessitate vacating the order.

## A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Magley v M & W Inc*, 325 Mich App 307, 313; 926 NW2d 1 (2018).

> When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. [*Id.* (quotation marks and citations omitted).]

Any issues of statutory interpretation are reviewed de novo. *Id.* In comparison, with regard to the trial court's award of attorney fees:

> The no-fault act provides for attorney fees when an insurance carrier unreasonably withholds benefits. The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact.
>
> Whereas questions of law are reviewed de novo, a trial court's findings of fact are reviewed for clear error. A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. [*Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008) (quotation marks and citations omitted).]

## B. FARM BUREAU'S MCL 500.3112 DEFENSE

"The no-fault act provides a comprehensive scheme for payment, as well as recovery, of certain 'no-fault' benefits, including personal protection insurance benefits." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 479; 960 NW2d 186 (2020) (quotation marks and citation omitted). An insurer is liable for payment of personal protection insurance (PIP) benefits "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1). These PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

On appeal, in challenging the trial court's grant of summary disposition to Husinka, Farm Bureau does not dispute that Husinka's attendant-care services were generally compensable under the PIP provisions of the no-fault act, and Farm Bureau does not dispute the reasonableness of the

charges.[4]  Instead, Farm Bureau contends that it discharged any potential liability to Husinka—specifically for services provided by Husinka between April 2018 and November 2018—by paying TheraSupport for services during that time.  In making this argument, Farm Bureau relies on MCL 500.3112, which at the time relevant to Husinka's claims,[5] stated in part:

> Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents. *Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person*.  If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto, the insurer, the claimant or any other interested person may apply to the circuit court for an appropriate order. . . .  [Emphasis added.]

The first sentence of MCL 500.3112 recognizes that a no-fault insurer may "satisfy its obligation to the insured by paying the injured person directly or by paying a party providing PIP services on the injured person's behalf."  *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 209-210; 895 NW2d 490 (2017).  More relevant to the issues in this case, the second sentence of MCL 500.3112 protects insurers against making a double payment of no-fault benefits by discharging an insurer's liability upon payment of benefits, provided that the payments are made in good faith and that the insurer has not previously been notified in writing of another person's claim.  *Id*. at 210.  It is, for example, a common practice of insurers to directly pay healthcare providers for the benefit of their insured, *id*., and having done so in good faith and without notice of other claims, an insurer would be discharged of its liability to the insured.  See e.g. *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 409; 927 NW2d 717 (2018).  In the context of a settlement agreement, an insurer's liabilities might also be discharged under MCL 500.3112 by payment of a settlement that covers the disputed charges.  See *Physiatry & Rehab Assoc v Alhalemi*, 333 Mich App 87, 91-92; 958 NW2d 626 (2020).  An insurer cannot, however, simply make payment to a person not entitled to the benefits and claim that the payments were made in "good faith."  See, e.g., *Commire v Auto Club of Mich Ins Group*, 183 Mich App 299, 302; 454 NW2d 248 (1990) (concluding that erroneous payment of benefits to minor-insureds' father did not discharge liability to the insureds under MCL 500.3112).

---

[4] In its response to Husinka's motion in the trial court, Farm Bureau did assert that there were fact questions remaining on other issues aside from its MCL 500.3112 defense, such as the reasonableness of Husinka's charges.  However, Farm Bureau has abandoned these arguments on appeal by failing to brief these issues.  See *State Treasurer v Sprague*, 284 Mich App 235, 243; 772 NW2d 452 (2009) ("Failure to brief a question on appeal is tantamount to abandoning it.").

[5] "The no-fault act, MCL 500.3101 *et seq*., was substantially amended by 2019 PA 21, effective June 11, 2019.  This case was commenced before the amendment and, therefore, it is controlled by the former provisions of the no-fault act." *George v Allstate Ins Co*, 329 Mich App 448, 451 n 3; 942 NW2d 628 (2019).  Accordingly, in this case, we consider the former versions of the applicable no-fault provisions.

Moreover, as an assertion that an amount owed has been discharged by payment, MCL 500.3112 functions as an affirmative defense, placing the burden on Farm Bureau to come forward with evidence to support this defense at trial. See MCR 2.111(F)(3) (including among affirmative defenses "payment; release; satisfaction; discharge"); *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 304; 968 NW2d 367 (2021) (explaining burden of proof applicable to affirmative defenses). In the context of summary disposition motions, when "the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996). The party must support its position with substantively admissible evidence. *Karaus v Bank of New York Mellon*, 300 Mich App 9, 17; 831 NW2d 897 (2012). If the party "fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Quinto*, 451 Mich at 363.

As applied in this case, in relying on MCL 500.3112, Farm Bureau essentially asserts that it is being double-billed for Husinka's services because it made payments to TheraSupport that covered Husinka's charges. The problem with Farm Bureau's position is that Farm Bureau failed to factually support its allegations when responding to Husinka's motion for summary disposition. In the trial court, both Husinka and TheraSupport submitted billing statements and records of the services provided, showing the hours for the services they provided to support that they were not double-billing but billing for separate services.[6] In response, Farm Bureau did not identify anything in the proofs submitted—nor did Farm Bureau offer any additional evidence to support— that Husinka's hourly charges were included in TheraSupport's statements.

Instead, Farm Bureau alleges that it paid TheraSupport a per diem and that Farm Bureau believed that this per diem included *all* possible attendant-care services. There is, however, no agreement between Farm Bureau and Taliaferro regarding payment of a per diem to TheraSupport. And more specifically, there is no evidence of an agreement indicating that a per diem paid to TheraSupport was inclusive of *all* attendant-care services that Taliaferro might need.[7] Nor has Farm Bureau identified any contractual language in an agreement (1) between Taliaferro and TheraSupport or Husinka, (2) between Farm Bureau and TheraSupport or Husinka, or (3) even between TheraSupport and Husinka, to support that there was a "per diem" rate paid by Farm Bureau to TheraSupport that included all Taliaferro's attendant care needs or that, more

---

[6] For example, for April 22, 2018, TheraSupport's records show that it provided services from 10:00 a.m. to 5:30 p.m. In comparison, for April 22, 2018, Husinka's bills indicate that it sought payment from Farm Bureau for services provided between 12:00 a.m. and 10:00 a.m., and later from 5:30 p.m. until midnight. And Husinka's activity logs for April 22, 2018, similarly show services provided to Taliaferro between 12:00 a.m. and 10:00 a.m., and later from 5:30 p.m. until midnight. In short, Husinka and TheraSupport provided separate services on April 22, 2018; there is no overlap, and no double-billing. TheraSupport and Husinka submitted numerous such records, and Farm Bureau does not suggest that there is any overlap to be found during the dates in question.

[7] As discussed, there was a settlement between Farm Bureau and Fried, but that settlement agreement applied *only* to claims arising before April 20, 2018. It said nothing about establishing a daily rate for all Taliaferro's services after that date.

-8-

specifically, also covered Husinka's charges. Stated differently, there is no basis for Farm Bureau to believe that payments for services provided by Husinka should instead be paid to third-party TheraSupport.

On this record, Farm Bureau's mere assumption about what was included in its $900 a day payment to TheraSupport does not provide a basis for discharging Farm Bureau's liability to Taliaferro or Husinka with regard to Husinka's services. Indeed, MCL 500.3112 only discharges the insurer's liability *to the extent of the payments*. And the evidence—that Farm Bureau failed to rebut—is that the $900 payment extended only to cover services provided by *TheraSupport*. As written, MCL 500.3112 does not discharge liability for services provided beyond those covered by the payments made by an insurer. See *Henry Ford Health Sys*, 326 Mich App at 409 (recognizing that MCL 500.3112 discharges an insurer's obligation "with respect to *particular benefits* that have been incurred") (emphasis added). Absent evidence that Farm Bureau is being double-billed for Husinka's services, and absent evidence of an agreement or a settlement to the effect that there was a per diem covering *all* attendant-care services, Farm Bureau's payments to TheraSupport did not discharge its liability for separate services provided by Husinka, and Farm Bureau's discharge defense under MCL 500.3112 fails.

This conclusion is further supported by MCL 500.3112's express requirement of a "good faith" payment by the insurer. Although "good faith" is something of "an elusive idea," it has been defined as a "[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." *Black's Law Dictionary* (11th ed) (quotation marks and citation omitted). Without suggesting any wrongdoing by Farm Bureau in this case, Farm Bureau's protestations of "good faith" strain credulity when it appears that Farm Bureau's claim of a good-faith payment rests, at most, on a mere assumption about what services were included in its payments to TheraSupport. Yet, insurers have an obligation to investigate claims, 14 Couch, Insurance, 3d, § 198:27, and in the no-fault context, they are obligated to police costs to ensure the reasonableness of charges, *Spectrum Health Hosps*, 333 Mich App at 483. Under MCL 500.3112, if an insurer has questions about "the proper person to receive the benefits or the proper apportionment among the persons entitled thereto," the insurer "may apply to the circuit court for an appropriate order" regarding payment. In the context of this duty to investigate and to police costs, and with a mechanism available to resolve any confusion, an insurer cannot blindly make payments to one provider, without ascertaining what that payment entailed, and then claim in "good faith" that such a payment discharged liability to all other providers. As applied in this case, although Farm Bureau may have assumed that its payments to TheraSupport covered Husinka's services, Farm Bureau has offered no evidence of a good-faith basis for that belief, and MCL 500.3112 simply does not apply.

In sum, summary disposition was properly granted to Husinka because Farm Bureau failed to present evidence of a good-faith payment that would discharge liability for Husinka's services, meaning that MCL 500.3112 does not apply. In other words, there is no evidence of double-billing for Husinka's services, and even viewing the evidence in a light most favorable to Farm Bureau, there was no good-faith basis for Farm Bureau to believe that payments for services provided by Husinka, legally owed to Taliaferro (or Husinka as Taliaferro's assignee), should be instead be paid to third-party TheraSupport. In these circumstances, MCL 500.3112 did not apply. Given that MCL 500.3112 does not apply, and that Farm Bureau does not otherwise dispute Husinka's

entitlement to benefits on appeal, summary disposition was properly granted to Husinka on its claim for no-fault benefits.

## C. PENALTY INTEREST

Under the version of MCL 500.3142 applicable to Husinka's claims, interest must be paid on "overdue" PIP benefits as follows:

> (1) Personal protection insurance benefits are payable as loss accrues.

> (2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

> (3) An overdue payment bears simple interest at the rate of 12% per annum.

This statute, commonly referred to as the "penalty interest provision," is "intended to penalize an insurer that is dilatory in paying a claim." *Bronson Health Care Group, Inc v Titan Ins Co*, 314 Mich App 577, 582; 887 NW2d 205 (2016). It applies "irrespective of the insurer's good faith in not promptly paying the benefits." *Williams v AAA Mich*, 250 Mich App 249, 265; 646 NW2d 476 (2002).

> Interest awardable under MCL 500.3142(3) is a substantive element of the damages suffered by plaintiff. The jury, as fact-finder, was required to determine whether plaintiff was entitled to no-fault insurance benefits and whether such benefits were overdue. If the jury determined that the benefits were overdue, then the jury was required to consider whether penalty interest under MCL 500.3142 should be awarded to plaintiff. . . . [*Bonkowski v Allstate Ins Co*, 281 Mich App 154, 176; 761 NW2d 784 (2008).]

As applied in this case, fact questions related to when the benefits payable for Husinka's services became "overdue" preclude an award of a specific amount of interest at the summary disposition stage.[8] In this regard, it is Husinka's burden to prove, as part of its damages, that the

---

[8] Farm Bureau also reiterates its arguments regarding the possible discharge of its liability under MCL 500.3112 to argue that penalty interest was premature because liability had not been established. As already discussed, the trial court did not err by rejecting Farm Bureau's MCL 500.3112 defense and concluding that Farm Bureau was liable for payment of Husinka's charges.

-10-

benefits sought were overdue. See *id*. The only evidence Husinka offered regarding when it submitted proof of loss to Farm Bureau was the testimony of Husinka's principal, Matthew Husinka, who testified at his deposition that he first faxed or e-mailed bills to Farm Bureau "probably" sometime in June 2018. However, Husinka also conceded in the trial court—specifically in its reply brief relating to its motion for summary disposition—that it had "no paper trail" to support this assertion. Further, although Husinka's principal testified that he probably first submitted bills in June 2018, Husinka is seeking payment for services through November 2018, and it is entirely unclear when these additional bills were first submitted to Farm Bureau. Indeed, in the trial court, Husinka appeared to acknowledge the lack of certainty regarding when its bills were submitted to Farm Bureau, asserting in the alternative to its June 2018 estimate that, "[a]t the latest," Farm Bureau received the bills during discovery in *April 2019*.

Although a fact-finder might ultimately accept the testimony that Husinka's principal submitted bills to Farm Bureau in June 2018, at the summary disposition stage, the missing "paper trail" to support these assertions casts doubt on Matthew's credibility and supports the existence of a fact question on when Farm Bureau received reasonable proof of Husinka's claim. See *White*, 275 Mich App at 625. It also remains unclear when subsequent bills, for services through November 2018, were submitted, and as noted, Husinka's briefing acknowledged some uncertainty regarding when proof of loss was provided, identifying April 2019 as the latest date that proof of loss might have been submitted. On this record, fact questions remain regarding the date when proof of loss was provided to Farm Bureau. Further, without a "paper trail," it is hard to conceive how the trial court could have determined—particularly at the summary disposition stage—that Husinka submitted *reasonable* proof of loss to Farm Bureau. Husinka bears the burden, both in moving for summary disposition and in ultimately proving that the benefits were overdue within the meaning of MCL 500.3142. And on the record presented, Husinka did not meet its burden of proving that no questions of fact remained and that summary disposition on the issue of penalty interest was warranted as a matter of law. See MCR 2.116(C)(10); MCR 2.116(G)(4).

In concluding that a fact question remains, we note that the material issue is primarily a question of *when* the reasonable proof of loss was provided to Farm Bureau. That is, according to Husinka, some proof of loss was "probably" provided as early as June 2018, and "at the latest," it was provided during discovery in April 2019. Reasonable proof of loss provided during litigation can serve to start the start the 30-day period in MCL 500.3142 for purposes of determining whether benefits are overdue. See *Manley v Detroit Auto Inter-Ins Exch*, 127 Mich App 444, 461; 339 NW2d 205 (1983), remanded on other grounds by *Manley v Detroit Auto Inter-Ins Exch*, 425 Mich 140; 388 NW2d 216 (1986). However, exactly when the proof of loss was provided will affect when the benefits became overdue, and when the benefits became overdue will affect the calculation of the amount of interest due under MCL 500.3142(3). In other words, more interest will be due if proof of loss was provided in June 2018 as compared to April 2019. In these circumstances, we remand the case for further proceedings, including a trial if necessary, to determine when exactly Husinka submitted reasonable proof of loss, and on the basis of that determination, the interest should be recalculated accordingly under MCL 500.3142(3).

### D. ATTORNEY FEES

Relevant to Husinka's claim for attorney fees, as set forth in former MCL 500.3148(1):

An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

The purpose of this penalty attorney fees provision is to ensure prompt payment. *Bronson Methodist Hosp*, 295 Mich App at 456. "When benefits initially denied or delayed are later determined to be payable, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay." *Id*. (quotation marks and citation omitted). "The determinative factor is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Id*.

In this case, Husinka sought attorney fees in its motion for summary disposition. When ruling on this motion, the trial court dispensed with oral argument, see MCR 2.119(C)(3), meaning there were no factual findings on the record. The trial court's written order also contains no factual findings regarding the reasonableness or unreasonableness of Farm Bureau's initial refusal to pay. The written order addressed factors from *Smith*[9] in an attempt to determine a reasonable amount of attorney fees, but missing from the lower court record are any factual findings regarding the reasonableness or unreasonableness of Farm Bureau's initial refusal to pay Husinka. Attorney fees are not automatic in no-fault cases, and they are not warranted merely because Husinka prevailed or because Farm Bureau's MCL 500.3112 defense proved unsuccessful.[10] See *Bronson Methodist Hosp*, 295 Mich App at 456. Instead, MCL 500.3148(1) expressly requires the trial court to *find* that the insurer unreasonably refused to pay the claim or unreasonably delayed in making payment. Absent fact-finding by the trial court on the reasonableness of Farm Bureau's initial refusal to pay, the record is insufficient for our review, and the appropriate course in these circumstances is to remand for additional fact-finding by the trial court. See MCR 2.517;[11] *In re Martin*, 200 Mich App 703, 717; 504 NW2d 917 (1993) ("An appellate court's primary function in regard to fact finding is review of the trial court's record and determination whether that record supports the trial court's findings. It is not the function of an appellate court to decide disputed questions of fact in the first instance and then choose between affirmance or reversal by testing its factual conclusion against that which the trial court might have . . . reached.") (quotation marks and citation omitted).

---

[9] *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008).

[10] To the extent that Farm Bureau reiterates its arguments regarding the possible discharge of its liability under MCL 500.3112 to argue that attorney fees were premature because liability had not been established, as already discussed, the trial court did not err by rejecting Farm Bureau's MCL 500.3112 defense and concluding that Farm Bureau was liable for payment of Husinka's charges.

[11] Fact findings are unnecessary when deciding a motion "unless findings are required by a particular rule." MCR 2.517(A)(3). MCL 500.3148(1), which expressly requires the trial court to *find* that the insurer unreasonably refused to pay the claim, is a particular rule requiring a specific finding by the trial court.

On remand, the trial court should also address the reasonableness of any attorney fees awarded, considering properly submitted evidence. Procedurally, as noted, Husinka sought attorney fees at the summary disposition stage of proceedings. As the moving party, Husinka was required to "specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). And as the moving party, Husinka bore the initial burden of supporting its position with documentary evidence. See *Quinto*, 451 Mich at 362. Moreover, as the party requesting attorney fees, Husinka bore the burden of establishing the reasonableness of the fees requested. *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 148; 946 NW2d 812 (2019). And a party requesting attorney fees must support the requested amount with evidentiary support, which the trial court must examine and the opposing party may contest. *Augustine v Allstate Ins Co*, 292 Mich App 408, 432; 807 NW2d 77 (2011). Generally, a trial court should hold an evidentiary hearing to determine the reasonableness of contested attorney fees, unless the parties have otherwise created a sufficient record for the trial court to review the issue. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 359; 941 NW2d 685 (2019).

In this case, when moving for summary disposition, Husinka did *not* request a specific amount of attorney fees, nor did Husinka submit any documentary evidence to allow a finding of reasonable attorney fees, and no such evidence was in the record before Husinka moved for summary disposition. In asserting that attorney fees were warranted in this case, Husinka simply stated: "[Husinka] is entitled to attorney fees under MCL 500.3148, *to be determined in a subsequent proceeding*" (Emphasis added). In short, when ruling on Husinka's summary disposition motion, including the request for attorney fees, there was no basis in the record whatsoever on which the trial court have determined a reasonable amount of attorney fees. Absent a basis in the record before it, a specific amount of attorney fees could not have been awarded by the trial court when the trial court made its ruling on October 30, 2020. Cf. *Augustine*, 292 Mich App at 432-434 (concluding that trial court's finding of reasonable attorney fees was clearly erroneous given the "meager state of the record" that did not contain documentary support for the attorney fees requested).

After the trial court informed the parties of its summary disposition ruling on October 30, 2020, although the trial court not have determined an amount of attorney fees, Husinka drafted a proposed order awarding itself $26,397.63 in attorney fees. For the first time, Husinka identified an actual amount of attorney fees. And for the first time, Husinka also presented the trial court with documentation related to attorney fees, which Husinka attached to the order it drafted as "exhibits."[12] These tactics were improper and do not accord with the procedures for summary disposition, entering orders, or motion practice in general.

As noted, a summary disposition motion under MCR 2.116(C)(10) required Husinka to identify the undisputed issues and to submit its documentary evidence when moving for summary disposition so that Farm Bureau would have time to respond. MCR 2.116(G)(4); *Quinto*, 451

---

[12] The "exhibits" consisted of (1) two pages of the 2020 Economics of Law Practice Survey in Michigan, (2) an undated and unnotarized "affidavit" from Husinka's attorney, and (3) a copy of a retainer agreement between Husinka and its attorney.

Mich at 362. And notably, a trial court's summary disposition decision must be based on the "then filed" evidence, MCR 2.116(G)(5), i.e., evidence submitted *before the motion is decided*, not evidence submitted after a decision has been made. See *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310, 313 n 4; 660 NW2d 351 (2003); *Sprague v Farmers Ins Exch*, 251 Mich App 260, 265; 650 NW2d 374 (2002). Further, a party submitting a seven-day order is only supposed to draft an order that comports with the trial court's ruling that has already been made. See MCR 2.602(B)(3). There is nothing in MCR 2.602(B)(3) to support that a litigant submitting a seven-day order is empowered to submit supplemental evidence as "exhibits" to the order or that the seven-day procedures can be used to request additional relief.[13] Instead, if Husinka wanted to submit additional evidence after the trial court's ruling, is should have sought leave from the trial court to supplement its summary disposition motion, or it should have filed a new motion for a determination of the amount of attorney fees, or it should have noticed a hearing for the "supplemental proceedings" that Husinka had asserted were warranted to address attorney fees.[14] See generally MCR 2.119(A), (C)(1). As it stands, the belated "exhibits" that Husinka provided regarding its motion for summary disposition were not properly before the trial court, and they should not have been considered. See *Maiden v Rozwood*, 461 Mich 109, 127 n 9; 597 NW2d 817 (1999) (concluding that evidence submitted "after the summary disposition motion was argued, but before the trial court issued its written order," was "not properly before the [trial] court" when deciding the summary disposition motion). Absent these exhibits, when entering its order on Husinka's motion for summary disposition, there was no basis for the trial court's determination regarding a reasonable amount of attorney fees.

In sum, we vacate the award of attorney fees to Husinka, and we remand for a determination whether Farm Bureau's initial refusal to pay was unreasonable and, if so, a determination of a reasonable amount of attorney fees. If the trial court concludes that attorney fees under MCL 500.3148 are warranted because Farm Bureau's initial refusal to pay was unreasonable, the trial court should provide both parties the opportunity to present evidence, and to respond to

---

[13] See *Hessel v Hessel*, 168 Mich App 390, 396; 424 NW2d 59 (1988) (noting that the seven-day rule comes into play only *after the granting of the judgment*, and concluding that order was properly set aside when a judgment had not been entered and the proofs not even completed).

[14] On appeal, Husinka faults Farm Bureau for failing to request an evidentiary hearing on the appropriate amount of attorney fees "[w]hen the Court granted" the request for attorney fees. There is no record of the phone call during which the trial court's ruling was conveyed, making it unclear what, if anything, was said about the need for an evidentiary hearing. In any event, to suggest that Farm Bureau should have requested a hearing on attorney fees is wholly disingenuous when Husinka failed to inform Farm Bureau of the amount of attorney fees that it was seeking and when *Husinka* had already advised the trial court that supplemental proceedings were required to determine the amount of attorney fees. Without knowing the amount at issue, without being presented any evidence to support a particular amount—and given that Husinka had already indicated that proceedings should be held on the amount of attorney fees—Farm Bureau had no cause or basis to object to the reasonableness of the unidentified amount requested or to gratuitously request proceedings on the amount of attorney fees. Cf. *Augustine*, 292 Mich App at 432-434 (concluding that a party's failure to properly support a request for attorney fees "effectively handcuffed" the opposing party).

evidence, regarding reasonable attorney fees, and, if necessary, the trial court should hold an evidentiary hearing to determine reasonable attorney fees. See generally *Augustine*, 292 Mich App at 438.

## IV. FARM BUREAU'S CLAIMS AGAINST THERASUPPORT

Lastly, regarding TheraSupport, Farm Bureau argues that the trial court erred by sua sponte dismissing Farm Bureau's third-party complaint on the basis that Farm Bureau's claims against TheraSupport were moot, and Farm Bureau asserts that the trial court erred by denying Farm Bureau an opportunity to amend its third-party complaint.

As noted, we review de novo a trial court's decision on a motion for summary disposition. *Magley*, 325 Mich App at 313. Under MCR 2.116(I)(2), "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." A trial court's decision whether to allow amendment of a pleading is reviewed for an abuse of discretion. *Grayling Twp v Berry*, 329 Mich App 133, 151; 942 NW2d 63 (2019).

Initially, we conclude that there is no merit to Farm Bureau's assertion that the trial court improperly dismissed its third-party claims sua sponte on the basis of mootness. Farm Bureau's argument in this regard simply does not accord with the procedural history in this case. That is, Farm Bureau moved for summary disposition on its claims against TheraSupport on the basis that TheraSupport was an unlicensed, adult foster-care provider and that TheraSupport was not entitled to compensation for its services because they were not lawfully rendered. However, this was an entirely new allegation, not raised in Farm Bureau's pleadings, and not a proper basis for a summary disposition motion on the claims actually pleaded by Farm Bureau. In its response, TheraSupport noted that these licensing issues had not been pleaded in Farm Bureau's third-party complaint, and TheraSupport disputed the assertion that it needed to be licensed as an adult foster-care provider. TheraSupport *also* asserted that it was entitled to summary disposition under MCR 2.116(I)(2) on Farm Bureau's third-party claims, and in making this argument, TheraSupport—like Husinka—asserted that there was no double-billing and that TheraSupport had not been paid by Farm Bureau for services provided by Husinka between April and November 2018.

The issue of dismissing Farm Bureau's claims against TheraSupport was not, therefore, raised sua sponte by the trial court.[15] Moreover, in view of this procedural history, it is unclear why Farm Bureau believes that its claims against TheraSupport were dismissed as "moot." There is no mootness language in the final order, and there was no mootness argument pending before the trial court. Instead, the issue before the trial court—and the issue the trial court presumably

---

[15] Farm Bureau does not appear to raise any due-process arguments in connection with its claim that the trial court acted sua sponte. In an.y event, given that the issue was raised in TheraSupport's briefing, Farm Bureau had notice and an opportunity to respond. Farm Bureau also had the opportunity to move for reconsideration. There are, in short, no due-process concerns. See generally *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).

decided when dismissing TheraSupport—was whether Farm Bureau presented any evidence that TheraSupport had been paid for services provided by Husinka.[16]  As discussed with regard to Husinka, Farm Bureau has offered no evidence to support its double-billing arguments or to show that TheraSupport was paid for all attendant-care services Taliaferro received between April and November 2018.  Consequently, the trial court did not err by dismissing Farm Bureau's third-party claims against TheraSupport.  See MCR 2.116(C)(10), (I)(2).  Indeed, even if Farm Bureau were correct that the trial court made an erroneous mootness finding, this Court will uphold a trial court's decision when the trial court reached the right result for the wrong reason.  See *Elia Cos, LLC v Univ of Mich Regents*, 335 Mich App 439, 447; 966 NW2d 755 (2021).  In short, Farm Bureau has not shown error in the trial court's grant of summary disposition on Farm Bureau's third-party claims against TheraSupport.

We find error, however, in the trial court's failure to allow Farm Bureau to amend its complaint without providing a particularized reason for denying leave to amend.  Under MCR 2.116(I)(5), when granting summary disposition, "[i]f the grounds asserted are based on Subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."  Under MCR 2.118(A)(2), a party may amend a pleading by leave of the court, and leave "shall be freely given when justice so requires."  A motion to amend should ordinarily be granted, and a trial court must give a particularized reason for denying leave to amend.  *Kostadinovski v Harrington*, 321 Mich App 736, 743; 909 NW2d 907 (2017).  "[A]cceptable reasons for denial include undue delay, bad faith or dilatory motive by the party seeking leave, repeated failures to cure deficiencies after previously allowed amendments, undue prejudice to the nonmoving party, and futility."  *Id*.

In this case, the trial court did not expressly address Farm Bureau's request to amend its complaint against TheraSupport.  Instead, the trial court's order, which is captioned as, "Order Denying Motion for Reconsideration," simply denied the motion for reconsideration as follows: "Farm Bureau's motion is denied.  The Court finds it to be without merit."  Denying a reconsideration motion as being "without merit" is not a particularized reason for denying a request to amend, and it is not apparent what particularized reason, if any, the trial court meant to invoke by concluding that the reconsideration motion was "without merit."  And, on the sparse record of the trial court's rulings in this case, it is otherwise unclear on what basis the trial court denied Farm Bureau's request to amend its complaint.[17]

---

[16] Farm Bureau's complaint included claims for breach of contract, unjust enrichment, and conversion, as well as a request for declaratory relief.  Factually, however, all the claims arose from the same basic assertion that Farm Bureau paid TheraSupport for the attendant-care services provided by Husinka.

[17] TheraSupport emphasizes on appeal that Farm Bureau did not seek leave to amend until moving for reconsideration.  However, the mere fact that Farm Bureau requested leave to amend when seeking reconsideration is not a basis for denying leave to amend.  See *Jackson v White Castle Sys Inc*, 205 Mich App 137, 142-143; 517 NW2d 286 (1994).

Despite the trial court's failure to identify a particularized reason for denying leave to amend, TheraSupport asserts that the trial court should be affirmed because amendment would be futile. TheraSupport's futility argument in this regard is somewhat disingenuous. The crux of Farm Bureau's proposed amendment is that TheraSupport's services were not "lawfully rendered" as required by MCL 500.3157 because TheraSupport provided Taliaferro with supervision, personal care, and protection that can only be lawfully rendered by a provider licensed as an adult foster-care facility under MCL 400.707(7). See generally *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 57; 744 NW2d 174 (2007). On its face, this claim does not appear futile. See *Hakari v Ski Brule, Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998) ("An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face.").

In nevertheless asserting that the addition of these allegations would be futile, TheraSupport asserts that Farm Bureau's proposed amendment is factually unsupported. That is, TheraSupport concedes that "someone is providing" these services to Taliaferro, but TheraSupport asserts that there is no evidence that TheraSupport is providing these services because it is "obvious [that] a subcontracted party" provided these services. However, TheraSupport cannot have it both ways. Both TheraSupport and Husinka have maintained, and offered evidence to establish, that TheraSupport and Husinka both provided services and that there was *no* overlap in the services TheraSupport and Husinka provided between April and November 2020. Further, TheraSupport has *not* identified another subcontractor that it employed during that time. Indeed, to show that it was not billing for Husinka's services, TheraSupport submitted records of the services that TheraSupport claimed that it had provided to Taliaferro. Dr. Thomas Rosenbaum (TheraSupport's principal) testified at his deposition that Husinka provided only a "portion" of Taliaferro's attendant-care services and that, after the settlement, "we [TheraSupport] did continue to provide attendant care." Geoffrey Byron, a program director at TheraSupport, similarly acknowledged that the rate paid by Farm Bureau included "the provision of attendant care" services. Again, TheraSupport cannot simultaneously claim that it independently provided services to Taliaferro to dispute Farm Bureau's double-billing argument while at the same time claim that *all* services were "obviously" provided by a subcontractor. If there was an additional subcontractor aside from Husinka, or if there is otherwise an argument to be made that TheraSupport did not need to be licensed to provide the services at issue, TheraSupport can present that evidence in the trial court. But on the available record, TheraSupport's futility assertion lacks merit. On remand, the trial court shall either allow Farm Bureau to amend its complaint or provide a particularized reason for not allowing amendment. See *id*.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola